IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E. ALLEN REEVES, INC. *Plaintiff* | : CIVIL ACTION NO.<br>: 3:10-CV-01393-JAP-TJB |
| v. | : |
| MICHAEL GRAVES & ASSOCIATES, INC. *Defendant* | : |
| MICHAEL GRAVES & ASSOCIATES, INC. *Counterclaimant,* | : |
| v. | : |
| E. ALLEN REEVES, INC. *Counterdefendant* | : |
| MICHAEL GRAVES & ASSOCIATES, INC. *Third Party Plaintiff*, | : |
| v. | : |
| DAVID CHOU & ASSOCIATES;<br>KELTER & GILLIGO CONSULTING ENGINEERS;<br>FISHER MARANTZ STONE, INC.;<br>THE ARTS COUNCIL OF PRINCETON;<br>SAL ARNONE;<br>JOHN DOES 1-50,<br>*Third Party Defendants,* | : |

**DEFENDANT, COUNTERCLAIMANT, AND THIRD PARTY PLAINTIFF,
MICHAEL GRAVES & ASSOCIATES, INC.'S
BRIEF IN OPPOSITION TO THE ARTS COUNCIL OF PRINCETON'S MOTION TO
DISMISS COUNTS I AND II OF THE THIRD PARTY COMPLAINT**

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
John H. Osorio, Esq.
Raymond J. Michaud, Esq.
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
*Attorney for Defendant,
Michael Graves & Associates, Inc.*

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arcand v. Brother International Corp.*, 673 F.Supp.2d 282 ................................................. 4

*Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604 .................................... 4

*Noble v. Porsche Cars N. America, Inc.*, 694 F.Supp.2d 333 ............................................ 4

*Tormo v. Yormark*, 398 F.Supp. 1159 ............................................................................ 14

*United N.Y. Sandy Hook Pilots Association v. Rodermond Industrial*, 394 F.2d 65 .......... 9

*Wolverine Insurance Co. v. Tower Iron Works, Inc.*, 370 F.2d 700 ................................... 9

## STATE CASES

*Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 N.J. 55, 159 A.2d 97 ..................... 9, 13

*Alloway v. General Marine Industries, L.P.*, 149 N.J. 620 ................................................. 6

*Board of Education v. Utica Mutual Insurance Co.*, 172 N.J. 300 ..................................... 9

*Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548 ........................................ 10, 14

*Central Motor Parts Corp. v. E.I. DuPont*, 251 N.J.Super. 5 .......................................... 12

*Cola v. Packer*, 156 N.J.Super. 77 .................................................................................... 9

*Dean v. Barrett Homes, Inc.*, 406 N.J.Super. 453 .................................................. 6, 8, 11

*Dunn v. Praiss*, 139 N.J. 564 .......................................................................................... 13

*Durofee v. Pennsauken Township Planning Board*, 187 N.J.Super. 141 ......................... 11

*E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 361 N.J.Super. 362 ............................. 4

*Feldmesser v. Lemberger*, 101 N.J. at 184 ..................................................................... 11

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582 ............................................................. 13

*H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 .................................................. 4

i

*Hagen v. Galerano*, 66 N.J.Super. 319..................................................................................... 11

*Holloway v. State*, 125 N.J. 386, 593 A.2d 716.................................................................. 9, 12

*Howell v. Bennett Buick, Inc.*, 52 A.D.2d 590, 382 N.Y.S.2d 338 (App. Div.), appeal denied, 40 N.Y.2d 803, 387 N.Y.S.2d 1030, 356 N.E.2d 482 (Ct. App.1976), cited with approval in Cartel Capital Corp. v. Fierco of New Jersey, 81 N.J. 548, 568 ..................................................................................... 13

*Jugen v. Friedman*, 275 N.J.Super. 556 ............................................................................... 11

*Estate of Lash*, 169 N.J. 20.................................................................................................. 11

*McGlone v. Corbi*, 59 N.J. 86......................................................................................... 9, 13

*Safeway Stores, Inc. v. Nest-Cart*, 21 Cal.3d, 322, 146 Cal.Rptr. 550 [579 P.2d 441] (Cal. 1978), cited with approval in Cartel Capital Corp..................................... 14

*Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 788 A.2d 268........................................ 5, 14

*Spring Motors v. Ford Motor Co.*, 98 N.J. 555 ..................................................................... 8

*State Department of Environmental Protection v. Ventron*, 94 N.J. 473 .......................... 11

*T & E Industries v. Safety Light Corp.*, 123 N.J. 371 ..................................................... 9, 10

I.      Introductory Statement

This is the opposition of Defendant, Counterclaimant, and Third Party Plaintiff, Michael Graves & Associates, Inc., to the motion filed by the Arts Council of Princeton, in the Arts Council's attempt to avoid its liability to Graves, for the allegations contained in the E. Allen Reeves complaint, filed against Michael Graves & Associates, Inc. As the following will show, there is simply no basis for the Arts Council's arguments, and Graves respectfully requests this Court to deny the Arts Council's motion.

II.     Facts and Procedural History

This litigation arises out of a construction project for the expansion and renovation of the Arts Council of Princeton's ("Arts Council") building located at 102 Witherspoon Street, Princeton, New Jersey.  ("The Project")  (See Exhibit "A", generally, the Reeves Complaint).

The Arts Council is the owner of the Project.  On November 30, 2004, Michael Graves & Associates, Inc. ("Graves") entered into a written contract with the Arts Council, whereby Graves agreed to provide architectural services for the Project.  (Exhibit "B", Third-Party Complaint, at ¶10-12)

As part of its contract, Graves prepared the Project's architectural drawings and specifications, which were approved by Arts Council.  (Id., at ¶13-18)

Based upon Graves's architectural design and specifications, the project was prepared for bid.  The Arts Council selected E. Allen Reeves ("Reeves") as the General Contractor for the Project.  (Id., at ¶18-23)  Reeves entered into a construction contract with the Arts Council on January 23, 2006, whereby Reeves agreed to perform as the General Contractor for the Project. (Id.)  This contract required Reeves to perform the work in accordance with the Contract

Documents, which incorporated the architectural drawings and specifications created by Graves. (Id.; see, also, Exhibit "C", Arts Council - Reeves Contract).

The contract between the Arts Council and Reeves exempted Graves from responsibility for Reeves's failure to adhere to the Contract Documents and also required Reeves to warrant to Graves that the work will conform to the requirements of the Contract Documents. (Id. at ¶23-25; Arts Council – Reeves Contract.)

The contract further required that Graves was permitted to consider substitutions not properly approved or authorized, as defective. (Id., at ¶26; Arts Council – Reeves Contract.)

During construction, Reeves deviated from the requirements of the architectural drawings and specifications in significant respects. (Id., at ¶27-41)  It incorporated changes in the Project that were not in conformance with the Contract Documents, made substitutions of lesser quality and shorter warranty periods that were not in conformance with the architectural drawings and specifications, and submitted numerous unnecessary change orders. (Id.)

These deviations were not coordinated with Graves or its consultants in advance of the deviations. (Id.)

Reeves also did not conduct biweekly job meetings, as required by the specifications, which caused conflicts in the field, caused project delays and increased costs.  Reeves delayed in the submission of the structural steel shop drawings, which directly resulted in the delay in the structural steel fabrication and ultimately delayed the completion of the project.  (Id.)

As a result of all of these un-coordinated deviations, substitutions, changes, decisions, unnecessary change orders, lack of biweekly meetings, and submission delays, Graves was required to perform additional services, which were necessary to evaluate the un-coordinated deviations, in order to ensure the continued constructability of the Project.  (Id.)

As a direct and proximate result of Reeves' deviations from the Graves architectural design and specifications, Graves has incurred damages in excess of $1,052,645.00. These damages relate to increased architectural fees, sub-consultant fees, and expenses. (Id.)

On March 16, 2010, Reeves filed a Complaint commencing this present action against Graves. (See Exhibit "A")  The Complaint alleges professional negligence against Graves. (Id.) Reeves was represented by the firm of Cohen, Seglias, Pallas, Greenhall & Furman.  On March 16, 2010, Arts Council of Princeton filed a Demand for Arbitration with the American Arbitration Association against Graves. (See Exhibit "D", The Arts Council Demand for Arbitration).  The Arts Council is *also* represented by Cohen, Seglias, Pallas, Greenhall & Furman. (Id.) This demand for Arbitration was voluntarily withdrawn, as the Arts Council erroneously based its Demand for Arbitration on the contractual language of a previous, superseded version of the contract between the Arts Council and Graves.  The final contract contains no mandatory contractual arbitration language that requires mandatory arbitration between the Arts Council and Graves.

On July 16, 2010 Graves filed a First Amended Third Party Complaint. (See Exhibit "E").

On August 27, 2010 Graves filed a Second Amended Third party Complaint. (See Exhibit "F").

On August 13, 2010, the Arts Council filed the present Motion to dismiss Graves's indemnification and contribution claims, Count I and II of the initial Third Party Complaint.

3

III.     Legal Argument

*Issue I:*     <u>*There Is No Basis To Dismiss the Indemnification and Contribution Claims Under The Economic Loss Doctrine*</u>

The Arts Council's only argument is that that Graves's claims for indemnification and contribution are barred under the economic loss doctrine. However, the economic loss doctrine does not apply in this case.

A.     <u>*The Economic Loss Rule Does Not Apply*</u>

First, the economic loss doctrine holds that plaintiffs are prohibited from recovering in tort economic losses to which their entitlement flows only from a contract between the parties. <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 618 (3d Cir. 1995); <u>Noble v. Porsche Cars N. Am., Inc.</u>, 694 F. Supp. 2d 333, 336 (D.N.J. 2010).

The Arts Council has argued that Graves has not alleged personal injury or property damages. However, in Count I and II of the Graves Third Party Complaint, Graves is not asserting any affirmative claims, but rather is seeking contribution and indemnification from the Arts Council, in response to the claims asserted by E. Allen Reeves, which sound in tort law.

Because there is no contract between Graves and Reeves, the entitlement to recover for the economic losses claimed by Reeves's does not flow from any such contract related to Graves. As such, the economic loss doctrine does not apply.[1]

---

[1] This does not mean that no tort claims are viable between parties to a contract, as there are some claims, such as recovery under tort for negligent misrepresentation or fraud in the inducement, where economic damages can be recovered even when there is contractual privity. <u>See, e.g.</u>, <u>H. Rosenblum, Inc. v. Adler</u>, 93 N.J. 324, 461 A.2d 138, 143 (N.J. 1983), <u>superseded by statute on other grounds</u>, <u>E. Dickerson & Son, Inc. v. Ernst & Young, LLP</u>, 361 N.J. Super. 362, 367 (App. Div. 2003)(recovery for economic loss from negligence by one furnishing a service requires either direct contractual relationship or the injured party being a known beneficiary of the defendant's undertaking.); <u>Arcand v. Brother Int'l Corp.</u>, 673 F. Supp. 2d 282, 308 (D.N.J. 2009)(noting that a plaintiff may, under certain conditions, be permitted to proceed with tort claims for economic loss against party in contractual privity where the tort claims sounds in fraud in the inducement.)

4

Moreover, even where contractual privity exists, the economic loss rule does not apply when an independent duty, outside the duties in the contract, is owed by the breaching party. Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316, 788 A.2d 268 (2002).  If a defendant owes a duty of care separate and apart from the contract between the parties, then a tort claim such as negligence may lie.  Saltiel, 170 N.J. 297 at 314, 788 A.2d 268.

Graves has claimed that the Arts Council caused the issues on the project with regard to the Arts Council's approvals of the Reeves deviations, substitutions, changes, decisions, and change orders, as detailed in the Third Party Complaint.  As a result of the Arts Council's actions in approving the Reeves deviations, the plans and specifications provided by Graves and its consultants were not followed; substitutions of materials and systems were made without Graves's input or review, and critical provision of the specifications were overridden by Reeves, based upon the approval by the Arts Council.

Further, it should also be noted that the Arts Council's motion is a pre-discovery motion to dismiss.  In the normal process of discovery, Graves will offer expert testimony which will establish the standard of care required by the Arts Council to perform its contractual and non-contractual functions – including those duties owed to Graves by the Arts Council which were independent of any of the contracts in this case – as well as opine that the Arts Council failed to meet the applicable standards of care, and establish that the Arts Council's performance as the owner resulted in the claims alleged by Reeves. At the very least, the fact that discovery has not occurred should lead this Court to deny the plaintiff's motion.

Thus, as the Graves is not asserting affirmative claims against the Arts Council in the indemnification and contribution Counts and they do not stem from any contract between Graves and the Arts Council, but rather are limited to contribution and indemnification demands. The

economic loss doctrine is not a bar to Graves asserting the claim, in response to the Reeves complaint.

### B.     *The Cases Cited By Reeves Are Inapplicable.*

The Arts Council, in its brief, relies on Dean v. Barrett Homes, Inc., 406 N.J. Super. 453 (N.J. Super. 2009) and cites to Alloway v. General Marine Industries, L.P., 149 N.J. 620 (1997) and a number of irrelevant extra-jurisdictional cases in an attempt to establish that because Graves has "alleged no facts regarding personal injury or damage to 'other property,' and instead alleges only economic damages," that somehow the economic loss doctrine applies.

The error in the Arts Council's argument is that both Dean and Alloway are products liability actions and the paradigm which the Arts Council sets out – that tort actions are improper where there is no personal injury or damage to other property – applies where the claim is for economic damages in products liability cases, where the only loss stems from the loss of the product itself.  See, Alloway, at 622-623 (seeking recovery for economic loss resulting from damage to a boat); Dean at 455-456 (seeking recovery for economic loss resulting from damage to house from defective exterior siding from siding manufacturer.)

In Alloway, the Court specifically analyzed the issue in terms of product liability actions. First, it defined economic loss, noting that it "encompasses actions for the recovery of damages for costs of repair, replacement of ***defective goods***, inadequate value, and consequential loss of profits" as well as "the diminution in value ***of the product*** because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Alloway, at 627, emphasis supplied.

The Court then discussed the fact that the proper allocation of damages for economic loss, specifically as between a manufacturer and consumer, arising from defective products, depends on the specific type of economic loss, because some are more amenable to tort law,

6

whereas the vindication of a consumer's expectation damages is more properly protected under contract law:

> Allocation of economic loss between a manufacturer and a consumer involves assessment of tort and contract principles in the determination of claims *arising out of the manufacture, distribution, and sale of defective products*. Generally speaking, tort principles are better suited to resolve claims for personal injuries or damage to other property. Contract principles more readily respond to claims for economic loss caused by damage to the product itself.
>
> Various considerations support the distinction. Tort principles more adequately address the creation of an unreasonable risk of harm when a person or other property sustains accidental or unexpected injury. When, however, *a product fails to fulfill a purchaser's economic expectations*, contract principles, particularly as implemented by the U.C.C., provide a more appropriate analytical framework.

Id., at 628 (citations omitted, emphasis supplied.) Further, the Court noted that by enacting the Universal Commercial Code, with its provisions regarding warranties regarding the quality of goods and merchantability, the Legislature of New Jersey was establishing the desired balance concerning allocation of loss for the purchase of defective products:

> By enacting the U.C.C., the Legislature adopted a comprehensive system for compensating consumers for economic loss arising from the *purchase of defective products*. The U.C.C. represents the Legislature's attempt to strike the proper balance in the allocation of the risk of loss between manufacturers and purchasers for economic loss arising from injury *to a defective product*.
>
> Consequently, the U.C.C. provides for express warranties regarding the quality of goods, as well as an implied warranty of merchantability, and an implied warranty of fitness for a particular purpose. When a seller delivers *goods that are not as warranted*, the buyer may recover the difference between the value of the defective goods and their value if they had been as warranted.

Id., at 629-630 (citations omitted, emphasis supplied.) Considering all of these points, the Alloway Court concluded that when the economic loss is due to damage to the product itself and

7

there was damage to no other property and there was no personal injury, contract law would apply. Id. at 632 ("When the harm suffered is to the product itself, unaccompanied by personal injury or property damage, we concluded that principles of contract, rather than of tort law, were better suited to resolve the purchaser's claim." citing Spring Motors v. Ford Motor Co., 98 N.J. 555, 580 (1985)).

Similarly, the case in Dean was concerned with a defective product and, specifically, the allocation of economic losses as a result of damage to the product itself. The Court's analysis in this area cited, to a great extent, to the New Jersey Supreme Court's decisions in Alloway and Spring Motors for these principles. Dean, 406 N.J. Super. 453, 464-465.

Thus, both Dean and Alloway are limited to claims stemming from losses due to defective products.

However, this is not a case concerning the manufacturer of a good and economic damages stemming from damage to that product. The Arts Council is not a manufacturer of any product purchased by Graves, nor is Graves alleging any loss by the result of damages to any such product. Instead, the claims here are that the Arts Council owes contribution and indemnification to Graves for the allegations raised in the Reeves Complaint. Further, the damages were not to a product, but were the economic losses that the Arts Council created when it approved the Reeves deviations from the Graves plans and specifications. As a result, Dean and Alloway do not apply.

C.   *The Arts Council's Motion is Based Upon an Incorrect Interpretation of Graves Contribution and Indemnification Rights:*

Under New Jersey law, it has long been the law that claims for indemnification and contribution only accrue and arise upon a judgment against the party asserting the claim:

8

> On September 27, 1967 defendant Vermeren with the consent of the plaintiffs filed a third-party complaint against Ford, the theory of the claim being that if he, Vermeren, were held liable to plaintiffs he would be entitled to contribution or indemnification from Ford because of Ford's tortious conduct in selling a defective automobile. It is important to note that the filing of this complaint took place over two months after the statute of limitations expired on the injury claims of the plaintiffs against Ford. The statute, however, did not bar *Vermeren's action over for contribution or indemnification against Ford. That claim would not arise unless and until the plaintiffs recovered a judgment against Vermeren in their pending suit against him*, and would not be affected by the two-year limitation on the prosecution of plaintiffs' personal injury claims.

McGlone v. Corbi, 59 N.J. 86, 94-95 (1971); Cola v. Packer, 156 N.J. Super. 77, 81 n2 (App. Div. 1977). Those claims only accrue upon the fixing of liability against the party seeking indemnification:

> Indemnification obligations generally accrue only on an event fixing liability, rather than on preliminary events that eventually may lead to liability but have not yet occurred. Holloway v. State, 125 N.J. 386, 399, 593 A.2d 716 (1991); see also United N.Y. Sandy Hook Pilots Ass'n v. Rodermond Indus., 394 F.2d 65, 75 (3d Cir.1968) (stating that cause of action for indemnification accrues when liability is fixed by judgment against or payment by indemnitee); Wolverine Ins. Co. v. Tower Iron Works, Inc., 370 F.2d 700, 703 (1st Cir1966) (stating that cause of action for indemnification accrues when indemnitee suffers loss by paying injured person); McGlone v. Corbi, 59 N.J. 86, 94-95, 279 A.2d 812 (1971) (stating that cause of action for indemnification accrues at time judgment is rendered against indemnitee for underlying claim); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 81, 159 A.2d 97 (1960) (same).

Bd. of Educ. v. Utica Mut. Ins. Co., 172 N.J. 300, 307 (2002).

A party is entitled to common law indemnification where its liability is entirely constructive, vicarious, and not based on any fault of its own. T & E Industries v. Safety Light Corp., 123 N.J. 371 (1991) Adlers Quality Bakery v. Gaseteria, Inc., 32 N.J. 55 (1960).

9

Here, Graves has made a claim for contribution and indemnification against the Arts Council. Graves seek an award on their indemnity claim for full and complete indemnity from the Arts Council for any and all costs, including attorneys' fees, that Graves may incur as a result of the performance of the Arts Council on the project. New Jersey Courts have recognized such a claim for costs and fees on a pass-through indemnity basis. See, T & E Industries, 123 N.J. 371.

However, indemnity may not be obtained by a party who has been found to be at fault. New Jersey follows the Rule of the Restatement, Restitution, § 96 at 418 (1937):

> A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.

Therefore, an active wrongdoer, in the absence of a contractual understanding, cannot obtain indemnity from another wrongdoer, and thus escape any responsibility. See, Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548 (1980). There is no contractual agreement between Graves and the Arts Council that precludes the pursuit of indemnification and contribution claims by Graves against the Arts Council.

In this case, Graves takes the position that the allegations raised by Reeves were cause entirely by Reeves and the Arts Council, in that the Arts Council approved the Reeves deviations from the plans and specifications. Therefore, the Graves position is that it is an innocent party, who is entitled to pass-through indemnification from the Arts Council. It does appear that, if Graves is not found actively liable by the Court, then under its common law indemnity claim, Graves could obtain an award, including attorneys' fees, as part of a judgment against Arts Council. However, such an award of fees would be limited to the fees attributable to the fault of the Arts Council.

On April 14, 2008, the New Jersey Supreme Court published an opinion in the matter of DiMisa v. Acquaviva, R.E., A-35-08 (April 14, 2009).  In this opinion, the Court clarified New Jersey's so-called third-party exception to the American Rule governing counsel fees, which provides for an award to a litigant who, through the fault of another, is required to institute or defend an action involving a third party.  Traditionally, the attorney's fees would be awarded in cases where there was environmental fraud, State Department of Environmental Protection v. Ventron, 94 N.J. 473 (1983), real estate fraud, Feldmesser v. Lemberger, 101 N.J. at 184 (E&A 1924), fraudulent transfers, Jugen v. Friedman, 275 N.J. Super. 556 (App. Div.), certif. denied, 138 N.J. 271 (1994), fraudulent misrepresentations regarding the nature of property, Durofee v. Pennsauken Township Planning Board, 187 N.J. Super. 141 (App. Div. 1982), litigation over the invalidity of a release of claims against an insurer, Hagen v. Galerano, 66 N.J. Super. 319 (App. Div. 1961), a breach of fiduciary duty, Estate of Lash, 169 N.J. 20 (2001), and claims of undue influence by a trustee, In Re:  Niles, 176 N.J. 282 (2003).

According to the Supreme Court in DeMissa, although the American Rule is based upon the notion that the judicial system is best served if parties are responsible for their own counsel fees, New Jersey's court have recognized the third-party exception to the American Rule as discussed in the Restatement (Second) of Torts, §914 which provides:

> (1) The damages in a tort action do not ordinarily include compensation for attorney's fees or other expenses of the litigation.
>
> (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney's fees and other expenditures thereby suffered or incurred in the earlier action.

11

The exception reflects that those fees incurred in an action against a third party are merely an additional element of damages flowing from the tort. DeMissa, opinion at 9. As a prerequisite to an award of counsel fees under the exception, the party seeking an award of fees must either be required to institute or defend litigation with a third party precipitated by another's wrongful act. Id.

In Central Motor Parts Corp. v. E.I. DuPont, 251 N.J. Super. 5 (App. Div. 1991), the Appellate Division held:

> A common-law indemnittee, forced to defend claims for which its liability is only vicarious, is entitled not only to the cost of any judgment or reasonable settlement, but also to costs of defense occasioned by the indemnitor's fault.

In Central Motor Parts, a personal injury action, a parts distributor sought indemnification from the manufacturer of the part. In Central Motor Parts, the court noted that attorney's fees would pass through on a common law indemnity claim unless the distributor was independently at fault for plaintiff's damages as a result of its own conduct. That is, an indemnittee who has defended against allegations of its independent fault may not recover its costs. Central Motor Parts, supra. In Central Motor Parts, the Appellate Division held that so long as the indemnittee is free from active wrongdoing regarding the injury to the plaintiff, and has tendered the defense to the indemnitor at the start of the litigation, attorney's fees may be recovered.

Of course, it must be noted that the Graves claims for common law indemnification and contribution are based on the approvals of the Reeves deviations, by the Arts Council, have not accrued. Holloway v. State, 125 N.J. 386, 399-400 (1991). Generally, a cause of action for common law indemnification accrues at the time judgment is rendered against the indemnitee for

the underlying claim.  McGlone v. Corbi, 59 N.J. 86, 94-95 (1971); accord Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80-81 (1960).  And, a cause of action for contribution accrues when judgment is recovered against the defendant.  McGlone, *supra*, 59 N.J. at 94-95; see Pa. Greyhound Lines v. Rosenthal, 14 N.J. 372, 382 (1954) (cause of action for contribution accrues on payment by joint tortfeasor of money judgment recovered against him for injurious consequences of wrong).

The Comparative Negligence Act ("Act") enables the trier of fact to determine "the extent, in the form of percentage of each party's negligence or fault". N.J.S.A. 2A:15-5.2(a) (2). The Act extends beyond negligence to other kinds of fault, including breach of contract. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 609 (1997). For example, in the matter Dunn v. Praiss, 139 N.J. 564 (1995), the New Jersey Supreme Court held that a defendant physician facing a medical malpractice action was able to maintain a contribution claim against a co-defendant HMO where plaintiff alleged that a breach of contract by the HMO proximately caused plaintiff's injury. In so holding, the Dunn Court held that the nature of the wrongdoer's conduct is not particularly relevant. Id. at 577-78. Rather, the underlying principle is "that liability should be imposed in proportion to fault."

   Id.

In support of its holding, the Dunn Court referenced a series of cases where contribution claims were held to be viable as between defendants confronting disparate theories of liability. The court wrote as follows:

> For example, a manufacturer liable under warranty may seek contribution from a dealer who negligently repairs an automobile. Howell v. Bennett Buick, Inc., 52 A.D. 2d 590, 382 N.Y.S.2d 338, 340 (App. Div.), appeal denied, 40 N.Y.2d 803, 387 N.Y.S.2d 1030, 356 N.E.2d 482 (Ct. App.1976), cited with approval in Cartel Capital Corp. v. Fierco of New Jersey, 81 N.J. 548, 568 (1980). A bank absolutely liable under a

13

>       statute
> may seek contribution from a negligent attorney, <u>Tormo v. Yormark</u>, 398 F. Supp. 1159, 1188-89, DNJ 1975 (applying New Jersey law). A negligent supermarket may seek contribution from a manufacturer of a defective shopping cart strictly liable for a customer's injuries. <u>Safeway Stores, Inc. v. Nest-Cart</u>, 21 Cal.3d, 322, 146 Cal. Rptr. 550, 554-55, 579 P.2d 441, 445-46 (Cal. 1978), <u>cited with approval in Cartel Capital Corp.</u>, supra. 81 N.J. at 568.

Id.

Regardless of the theory of liability, Graves maintains the ability to pursue its claims for contribution and indemnification against the Arts Council. The trier of fact is therefore clearly entitled to evaluate the approvals of the Arts Council, with respect to the injuries allegedly sustained by Reeves in the context of the claims against Graves. The precise legal theory surrounding each claim is immaterial. What matters is that the alleged harm sustained by plaintiff remains unchanged. As liability should be imposed in proportion of the fault for plaintiff's alleged damages, the Arts Council's motion for summary judgment must be denied.

D.     <u>Conclusion</u>

Simply put, the economic loss rule is not a doctrine which applies in every case in which only an economic loss is suffered and no damage to person or property is present, regardless of whether a product is involved, or whether there is a contractual relationship between the plaintiff and defendant.  Rather, it is simply a doctrine which holds that a tort remedy does not lie where the entitlement flows from a contract between the parties and does not apply when the defendant owes an independent duty. <u>Saltiel v. GSI Consultants, Inc.</u>, 170 N.J. 297, 316, 788 A.2d 268 (2002).  Here, Graves has asserted claims for contribution and indemnification from the Arts Council and the Arts Council's  attempt to apply the economic rule in this application, where it is inappropriate, must fail.

At the very least, the fact that discovery has not taken place and expert reports have not been produced counsels in favor of denying the Arts Council's motion.

If the economic loss doctrine were as expansive as the Arts Council suggests, then vast swaths of the law would be decimated.  For instance, most trademark and copyright infringement cases, some legal and accounting malpractice tort claims, as well as tort claims for breach of fiduciary duty or claims such as tortious interference with prospective economic advantage or tortious interference with contract claims all could not be cognizable under the Arts Council's theory, as they often assert only economic loss without any accompanying personal or property injury.

Indeed, if the Arts Council's view of this matter were correct, then the Arts Council's own contract counterclaims against Graves would not be cognizable, as it is asserting merely economic loss.

However, because the economic loss rule applies in only limited circumstances – which are not present here – the Arts council's request for dismissal of Count I and II should be denied.

For all the foregoing reasons, this Court is respectfully requested to deny the Motion to Dismiss filed by the Arts Council.

                Respectfully Submitted,
                MARSHALL, DENNEHEY, WARNER,
                COLEMAN & GOGGIN

                /s/ Raymond J. Michaud, Esq.
                _____
                Raymond J. Michaud, Esq.
                *Attorney for Defendant,*
                *Michael Graves & Associates, Inc.*

Dated: September 3, 2010

06/1948218.v1