WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Joanna Piorek
33 Washington Street
Newark, New Jersey 07102
Tel: (973) 624-0800 Fax: (973) 624-0799
Attorneys for Third Party Defendant Fisher Marantz Stone, Inc.

---

| | |
|---|---|
| E. ALLEN REEVES, INC., | : United States District Court |
| | : District of New Jersey |
| Plaintiff, | : |
| v. | : Civil Action No. |
| | : 3:10-CV-01393-JAP-TJB |
| MICHAEL GRAVES & ASSOCIATES, INC. | : |
| Defendant | : |
| MICHAEL GRAVES & ASSOCIATES, INC., | : |
| Counterclaimant, | : |
| v. | : |
| E. ALLEN REEVES, INC., | : |
| Counterdefendant | : |
| MICHAEL GRAVES & ASSOCIATES, INC. | : |
| Third Party Plaintiff, | : |
| v. | : |
| DAVID CHOU & ASSOCIATES; KELTER & GILLIGO CONSULTING ENGINEERS; FISHER MARANTZ STONE, INC.; THE ARTS COUNCIL OF PRINCETON; SAL ARNONE; JOHN DOES 1-50, | : |
| Third Party Defendants | : |

---

**STATEMENT OF FACTS AND MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY DEFENDANT FISHER MARANTZ STONE'S MOTION TO DISMISS, IN LIEU OF ANSWER, THE THIRD PARTY COMPLAINT PURSUANT TO FRCP 12(b)(1).**

Helmut Beron, *Of Counsel and On the Brief*
Joanna Piorek, *On the Brief*

1037165.1

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .................................... 1

STATEMENT OF FACTS ........................................ 2

I. THE CONTRACT BETWEEN GRAVES AND FMS CONTAINS MANDATORY ARBITRATION LANGUAGE; THEREFORE, THERE IS A CONTRACTUAL OBLIGATION TO ARBITRATION ANY DISPUTES IN THE AMERICAN ARBITRATION ASSOCIATION FORUM ................................................. 6

    A. THE APPROPRIATE FORUM AS TO ANY DISPUTES BETWEEN GRAVES AND FMS IS THE AMERICAN ARBITRATION ASSOCIATION ........................... 6

    B. THE MANDATORY ARBITRATION PROVISION WITHIN THE CONTRACT BETWEEN GRAVES AND FMS IS REQUIED TO BE ENFORCED AS WRITTEN ........................... 7

CONCLUSION ............................................... 11

## TABLE OF AUTHORITIES

### FEDERAL CASES

PAGE

Courtney v. Choplin, 195 F. Supp. 2d 649 (D.N.J. 2002) .... 6

McBro Planning & Development Co. v. Triangle Electric Construction Co., 741 F.2d 342 (11th Cir.1984) .......... 8

Mutual Benefit Life Insurance Co. v. Zimmerman, 783 F. Supp. 853 (D.N.J.), aff'd, 970 F.2d 899 (3d Cir. 1992) ................................................... 7

Urie v. Roche, 209 F. Supp. 2d 412 (D.N.J. 2002) .......... 6

### STATE CASES

Annunziate v. Prudential Insurance Co., 206 N.J. Super. 210 (Law Div. 1992) .............................. 8

Bruno v. Mark MaGrann Associates, Inc., 388 N.J. Super. 539 (App. Div. 2006) .............................. 8

EPIX Holding Corp. v. Marsh & McLennan Companies, Inc., 410 N.J. Super. 453 (App. Div. 2009) .............. 8

Fawzy v. Fawzy, 199 N.J. 456 (2009) ....................... 8

Garfinkel v. Morristown Obstetrics & Gynecology Associates, 168 N.J. 124 (2001) ....................... 10

Kampf v. Franklin Life Insurance Co., 33 N.J. 36 (1960) ................................................... 9

Kimm v. Blisset, LLC, 388 N.J. Super. 14 (App. Div. 2006) ................................................... 7

Leodori v. CIGNA Corp., 175 N.J. 293 (2003) ............... 7

Marchak v. Claridge Commons, Inc., 134 N.J. 275 (1993) 8, 10

Martindale v. Sandvik, Inc., 173 N.J. 76 (2002) .......... 10

Tessmar v. Gosner, 23 N.J. 193 (1957) ..................... 9

1037165.1

Wasserstein v. Kovatch, 261 N.J. Super. 277 (App. Div.) .................................................. 7

Young v. The Prudential Insurance Co. of America, 297 N.J. Super. 605 (App. Div. 1997) ........................ 7

**FEDERAL RULES OF CIVIL PROCEDURE**

F.R.C.P. 12(b)(1) ................................................ 6

1037165.1

**PRELIMINARY STATEMENT**

This litigation pertains to alleged economic loss claims stemming from a construction project located in Princeton, New Jersey - specifically the reconstruction and addition to the building housing the Arts Council of Princeton.

Plaintiff E. Allen Reeves, as general contractor for the project, commenced this action seeking to recoup over a million dollars in alleged economic loss from, among others, Defendant Michael Graves & Associates, the architect for the project. Michael Graves & Associates responded by filing a counterclaim as well as a Third Party Complaint seeking indemnification and contribution for the economic loss claim from its subcontractors and/or consultants, including Fisher Marantz Stone, the moving party herein.

While denying any liability as to the claims asserted, Fisher Marantz Stone asserts that the allegations asserted against it must be dismissed pursuant to the contractual agreement between it and Michael Graves & Associates which mandates that any disputes be resolved via mediation and/or arbitration not before this Court. Accordingly, Fischer Marantz Stone requests that Your Honor dismiss the claims asserted against it with prejudice as this Honorable Court lacks subject matter jurisdiction over them.

**STATEMENT OF FACTS**

1. On or about March 16, 2010, Plaintiff E. Allen Reeves, Inc. (hereafter "Reeves") filed a Complaint against Defendant Michael Graves & Associates (hereafter "Graves"). See Complaint, attached as Exhibit A to the Affidavit of Charles Stone, which in turn is attached in total as Exhibit 1 to the Certification of Counsel.

2. Thereafter, on or about July 16, 2010, Graves filed a Counterclaim and Amended Third Party Complaint. See Exhibit B to Stone Affidavit.

3. Most recently, on or about August 27, 2010, Graves filed a Second Amended Third Party Complaint. See Exhibit 2 to Counsel Certification.

4. Within its Third Party Complaint, which is asserted against Third Party Defendants David Chou & Associates, Kelter & Gilligo Consulting Engineers; the Arts Council of Princeton, Sal Marone, and Fisher Marantz Stone (hereafter "FMS"), Graves seeks contribution and indemnification for economic loss from the Third Party Defendants including FMS. See Exhibit B, Counts 1 and 2 to the Stone Affidavit.

5. The basis for Graves' claims against FMS is that FMS was "retained by and/or provided drawings, specifications and details to" Graves. See Stone Affidavit, Exhibit B, Count 1, ¶46 and Count 2, ¶52.

6. Graves further asserts that FMS breached the duty it owed to Graves. *See* Stone Affidavit, Exhibit B, Count 1, ¶48 and Count 2, ¶54.

7. While denying any breach of duty or any liability and negligence related to this project, the relationship between FMS and Graves is established through and set forth pursuant to the terms of the AIA Document C142 – 1997 Agreement, dated as of November 30, 2004 between Graves, as Architect and FMS, as Consultant (hereafter "Graves-FMS Contract"). *See* Stone Affidavit, Exhibit C.

8. According to the Graves-FMS Contract, FMS was to provide "lighting consultant services in accordance with Consultant's proposal letter dated February 11, 2005." *See* Stone Affidavit, Exhibit C, p. 2, Article 1 – Description of Scope. *See also* Stone Affidavit, Exhibit D, the February 11, 2005 letter from FMS to Graves care of Diana Nelson.

9. Article 6.1 of the Graves-FMS Contract provides that "[t]his Agreement represents the entire and integrated agreement for this Part of the Project between the Architect and Consultant and may be amended only by written instrument signed by both Architect and Consultant." *See* Stone Affidavit, Exhibit C, p. 3, Article 6.1.

10. Notably, the Graves-FMS Contract provides that all disputes must first be mediated and then, should any disputes or claims remain, they are subject to arbitration.

11. Specifically, Article 6.6 of the Graves-FMS Contract provides:

> Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to arbitration in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof. Claims, disputes and other matter that are not resolved by mediation shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

See Stone Affidavit, Exhibit C, p. 4, Article 6.6.

12. Accordingly, since the claims asserted by Graves against FMS in its Third Party Complaint arise out of or are related to the services provided by FMS pursuant to the Graves-FMS Contract, asserting such claims before this Court is inappropriate and in violation of the Graves-FMS Contract.

13. In fact, the act of asserting the Third Party Complaint against FMS is in violation of the Graves-FMS Contract because the contract demands that to the extent that Graves has "any claim, dispute or other matter in question arising out of

4

or related to this Agreement", and thus the professional services provided by FMS, then Graves must demand mediation and arbitration of such matters. Graves cannot just simply avoid, disavow and otherwise breach the mediation-arbitration provision of the Graves-FMS Contract by filing its third party action against FMS.

14. Consequently, Graves' Third Party Complaint against FMS must be dismissed in light of the mediation and arbitration mandates set forth in Article 6.6 of the Graves-FMS Contract.

## LEGAL ARGUMENT

I. THE CONTRACT BETWEEN GRAVES AND FMS CONTAINS MANDATORY ARBITRATION LANGUAGE; THEREFORE, THERE IS A CONTRACTUAL OBLIGATION TO ARBITRATE ANY DISPUTES IN THE AMERICAN ARBITRATION ASSOCIATION FORUM.

   A. THE APPROPRIATE FORUM AS TO ANY DISPUTES BETWEEN GRAVES AND FMS IS THE AMERICAN ARBITRATION ASSOCIATION

FMS seeks to dismiss the claims asserted against it for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure asserting that per the provisions of the contract between it and Graves that mandate AIA arbitration, this Court lacks the statutory or constitutional power to adjudicate the claims against FMS. *See Courtney v. Choplin*, 195 F.Supp.2d 649 (D.N.J. 2002); *Urie v. Roche*, 209 F.Supp.2d 412 (D.N.J. 2002). The matter before the Court specifically relates to issues which should be resolved by the American Arbitration Association forum pursuant to a mandatory arbitration provision in the AIA C142 contract between Graves and FMS. Accordingly, the American Arbitration Association is the proper forum for any disputes between Graves and FMS and thus this Court lacks subject-matter jurisdiction over same.

6

1037165.1

### B. THE MANDATORY ARBITRATION PROVISION WITHIN THE CONTRACT BETWEEN GRAVES AND FMS IS REQUIRED TO BE ENFORCED AS WRITTEN

Fisher Marantz Stone ("FMS") respectfully requests that the AIA C142-1997 Abbreviated Standard Form of Agreement Between Architect and Consultant be enforced as written. The AIA C142, as the only valid and enforceable contract between Graves and FMS, contains a mandatory arbitration clause that compels participation in the American Arbitration Association forum.

A strong public policy favors "arbitration as a means of dispute resolution" and requires "liberal construction of contracts in favor of arbitration." *Young v. The Prudential Ins. Co. of Am.*, 297 N.J. Super. 605, 617 (App. Div. 1997). Nonetheless, arbitration remains a matter of contract; thus the parties may be compelled to arbitrate only that to which they agreed. *Leodori v. CIGNA Corp.*, 175 N.J. 293, 302 (2003); *Kimm v. Blisset, LLC*, 388 N.J. Super. 14, 25 (App. Div. 2006).

In fact, because of its standing as a favored means of dispute resolution, even a non-signatory to an arbitration agreement may nonetheless be bound by that agreement. *See Mutual Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 865-66 (D.N.J.), *aff'd*, 970 F.2d 899 (3d Cir. 1992); *Wasserstein v. Kovatch*, 261 N.J. Super. 277, 286 (App. Div.) (relationship of the claim to the subject matter of the arbitration clause determines arbitrability), *certif. denied*, 133 N.J. 440 (1993);

*Bruno v. Mark MaGrann Associates, Inc.*, 388 N.J. Super. 539, 547 (App. Div. 2006) (homeowners with claims related to their heating system had to arbitrate claims with developer's subcontractors despite the fact that subcontractors and homeowners were not signatories to a given contract); *EPIX Holding Corp. v. Marsh & McLennan Companies, Inc.*, 410 N.J. Super 453 (App. Div. 2009); *see also McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir.1984) (contractor and project manager with no contractual relationship required to arbitrate their disputes because the claims were "'intimately founded in and intertwined with'" an underlying contract that contained an arbitration clause).

Since "[a]n arbitration agreement is a contract and is subject, in general, to the legal rules governing the construction of contracts. It is for that reason that binding arbitration cannot be imposed by judicial fiat." *Fawzy v. Fawzy*, 199 N.J. 456, 469 (2009). In that regard, it is a well-established principle of New Jersey contract law that Courts should "interpret a clear, unambiguous contract as written." *Annunziate v. Prudential Ins. Co.*, 206 N.J. Super. 210, 214 (Law Div. 1992), and thus "[c]ourts should enforce contracts as made by the parties." *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 281 (1993). Therefore, when contracts terms are clear, "it is the function of a Court to enforce it as written and not to

8

make a better contract for either of the parties." *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43 (1960).

That said, an agreement must be construed in the context of the circumstances under which it was entered into and must be accorded a rational meaning in keeping with the express general purpose. *See Tessmar v. Gosner*, 23 N.J. 193, 201 (1957).

Here, Graves willingly entered into and executed AIA C142 when retaining the services of FMS as a lighting consultant on the Project. AIA C142 clearly contains a provision mandating mediation/arbitration with respect to any disputes arising from the contracted professional services - in this case the lighting consultation services provided by FMS.

In fact, Article 6.6 of the executed AIA C142 between Graves and FMS states:

> Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to arbitration in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof. Claims, disputes and other matter that are not resolved by mediation shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

*See* Stone Affidavit, Exhibit C, p. 4, Article 6.6.

9

1037165.1

Accordingly, since the claims asserted by Graves against FMS in its Third Party Complaint arise out of or are related to the services provided by FMS pursuant to the Graves-FMS Contract, asserting such claims before this Court is inappropriate and in violation of the Graves-FMS Contract (AIA C142). Consequently, as both Graves and FMS knowingly executed the Graves-FMS Contract (AIA C142), they clearly intended to be subject to its mediation/arbitration clause. Therefore, apart from the fact that the New Jersey judiciary favors arbitration as a means of dispute resolution (see *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 84-85 (2002)), the contract between Graves and FMS should be enforced as written as it expresses the intentions of the parties as to an agreement for mandatory arbitration. *See also Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 131 (2001); *Marchak v. Claridge Commons Inc.*, 134 N.J. 275, 281 (1993). Accordingly, the claims against FMS should be dismissed because Graves and FMS agreed to the arbitration provision.

Again, in the present matter, it is clear that the contract between Graves and FMS contains a mandatory arbitration provision (Article 6.6 of AIA C142) and further it is clear that Graves is seeking contribution and indemnification for economic loss from FMS with respect to any economic loss resulting from FMS's provision of lighting consultant services. Thus, this

10

1037165.1

Court must dismiss and otherwise direct Graves and FMS to proceed to arbitration.

## CONCLUSION

Pursuant to the applicable law and the aforementioned rationale, Third Party Defendant Fisher Marantz Stone respectfully requests the Court dismiss the third party claims asserted against it by Third Party Plaintiff Michael Graves & Associates as the terms of the contract between FMS and Graves mandates that such claims and any associated disputes be resolved in arbitration and not before this Honorable Court.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
*Attorneys for Third Party Defendant Fisher Marantz Stone*

By: ___s/ Joanna Piorek___

Date: 9/8/10

1037165.1