E. Allen Reeves, Inc. v. Michael Graves & Associates, Inc.
3:10-cv-01393-MAS-TJB

**EXHIBIT "1" – UNDISPUTED FACTS**

**I.      BACKGROUND**

1.      The dispute arises out of the design and construction of the "Renovation and Expansion of the Arts Council of Princeton Project" (the "Project") located at 102 Witherspoon Street, Princeton, NJ (the "Property").

2.      The Project is also referred to as the "Paul Robeson Center."

3.      The Project was the renovation of an existing 2-story building and basement and construction of a new addition.

4.      Due to the existing conditions of the existing building, the site and the height restrictions placed by the Borough of Princeton, the Project has a "very constrained site and . . . difficult contours."

5.      The Project and Property is owned by the Arts Council of Princeton ("ACP").

6.      ACP is a New Jersey non-profit organization located at 102 Witherspoon Street, Princeton, NJ.

7.      Ann Reeves was founding director of ACP.

8.      Ann Reeves is not related to E. Allen Reeves, Inc. - entity or personnel.

9.      Michael Graves & Associates, Inc. ("Graves") is an architectural firm created and organized under the laws of the state of New Jersey with a business address of 341 Nassau Street, Princeton, NJ.

10.     Graves' design work includes master plans, corporate headquarters, numerous office buildings, hotels and resorts, restaurants and retail stores, sports and recreation centers, healthcare facilities, civic projects including embassies, courthouses, monuments, a wide variety of university buildings, museums, theaters, public libraries and both multi-family and private residential projects.

11.     The ACP Project is Graves' first non-residential project in the Borough of Princeton, other than the renovation of its own buildings.

12.     Karen Nichols is a New Jersey licensed architect.

13.     Karen Nichols is a principal of Graves, often referred to as "managing principal" and the corporate secretary of Graves.

14.     Karen Nichols is not a member of one of the "design studios" of Graves and did not perform design work on the Project.

E. Allen Reeves, Inc. v. Michael Graves & Associates, Inc.
3:10-cv-01393-MAS-TJB

15.     Karen Nichols works on business development, publications, exhibitions, promotion and public relations on behalf of Graves.

16.     As part of her duties as Managing Principal, Karen Nichols writes contracts and negotiates them on behalf of Graves.

17.     Tom Rowe is a New Jersey licensed architect.

18.     Tom Rowe was the Architect of Record for the Project.

19.     Tom Rowe leads one of the "design studios" at Graves.

    A.     **GRAVES AND GRAVES' PERSONNEL RELATIONSHIP WITH ACP**

20.     Karen Nichols became involved with ACP through Michael Graves in 1977.

21.     Karen Nichols volunteered for ACP was on the board of directors for ACP from approx. 1990-97.

22.     Karen Nichols provided monetary donations to ACP.

23.     Karen Nichols considers Peter Bienstock a friend, but does not socialize with him.

24.     Graves was chosen as the architect for the Project by the ACP Board of Directors.

25.     Karen Nichols did not attend ACP Board meetings when there were discussions of the selection of the architect for the ACP project.  Karen Nichols recused herself from all discussion relating to the selection of the architect.

**II.     DESIGN PHASE**

    A.     **THE GRAVES CONTRACT**

26.     ACP and Graves entered into a written contract dated November 30, 2004, which incorporated, as Exhibit A the proposal for design services and charges of Graves.

27.     The form of the Graves Contract was a modified AIA Document B155 entitled "Standard Form of Agreement Between Owner and Architect for a Small Project, 1993 Edition."

28.     The value of the Contract was $457,000, with allowances for specialty consultants of $46,000.

29.     Article 1 of the Graves Contract with ACP, states: The Architect shall provide architectural services for the project, including normal structural, mechanical and electrical design services. Services shall be performed in a manner consistent with professional skill and care.

E. Allen Reeves, Inc. v. Michael Graves & Associates, Inc.
3:10-cv-01393-MAS-TJB

30.	Graves' architectural and engineering services included the following phased tasks: schematic design, design development, construction documents, bidding and negotiation and construction administration.

31.	Article 1.2 of the Graves Contract states "§1.2 During the Construction Phase, the Architect shall act as the Owner's representative and provide administration of the Contract between the Owner and Contractor. The extent of the Architect's authority and responsibility during construction is described in this Agreement and in AIA Document A201, General Conditions of the Contract for Construction. Unless otherwise agreed, the Architect's services during construction include visiting the site, reviewing and certifying payments, reviewing the Contractor's submittals, rejecting nonconforming Work, and interpreting the Contract Documents. The Owner shall have final sign-off on all matters affecting the cost of the Project.

32.	Article 1.2 of the Graves Contract states that the Owner shall have final sign-off on all matters affecting the cost of the Project.

33.	Graves was contractually obligated to review and respond to Reeves' Requests for Information ("RFIs") within seven (7) working days.

34.	Tom Rowe and other principals state they did not charge ACP for their time on the Project.

35.	Rowe's hourly time records show 283 hours billed to the Project from November, 2004 through May, 2008.

36.	Nelson's hourly time records show 4010 hours billed on the Project during the same time period.

    **B.	SUB-CONSULTANT CONTRACTS**

37.	Graves engaged David Chou & Associates ("Chou"), a Pennsylvania Corporation doing business at 1710 Walton Road, Suite 202, Blue Bell, Pennsylvania, as a structural engineering sub-consultant to Graves for the Project.

38.	The Chou Contract was a modified form AIA Document C142-1997 "Abbreviated Standard Form of Agreement Between Architect and Consultant to be used in conjunction with a Standard Form of Agreement Between Owner and Architect, 1997 Edition" dated November 30, 2004.

39.	Chou agreed to provide the structural design for the Project for payment in the amount of $42,000.

40.	Chou was retained by Graves to provide drawings, specifications and details to Graves related to the design of the structural portion of the Project.

E. Allen Reeves, Inc. v. Michael Graves & Associates, Inc.
3:10-cv-01393-MAS-TJB

41.     Section 4.4 of the Chou Contract required Graves to "review the Consultant's work for compliance with the Owner's program and for overall coordination with the architectural and engineering requirements."

42.     Graves engaged Kelter & Gilligo Consulting Engineers ("K&G"), a New Jersey Corporation doing business at 14 Washington Road, Suite 221, Princeton Junction, NJ, as the Mechanical (or HVAC), Electrical, Plumbing and Fire Protection engineering sub-consultant to Graves for the Project.

43.     The K&G Contract was a modified form AIA Document C142-1997 "Abbreviated Standard Form of Agreement Between Architect and Consultant to be used in conjunction with a Standard Form of Agreement Between Owner and Architect, 1997 Edition" dated November 30, 2004.

44.     K&G was retained by Graves to provide drawings, specifications and details to Graves related to the design of the MEP and fire protection portion of the Project.

45.     Section 4.4 of the K&G Contract required Graves to "review the Consultant's work for compliance with the Owner's program and for overall coordination with the architectural and engineering requirements."

    **C. ACP PROVIDED DOCUMENTS RELATING TO**
      **EXISTING CONDITIONS**

46.     ACP had a set of original 1939 blueprints of the building referred to as the "1939 Linens."

47.     ACP provided 1939 Linens to Graves.

48.     ACP provided several other existing condition reports to Graves including, but not limited to, a Structural Conditions report.

**III. BID PHASE**

49.     E. Allen Reeves, Inc. ("Reeves") was one of several bidders on the Project.

50.     Reeves is a Pennsylvania corporation, authorized to transact business in New Jersey, and located at 1145 York Road, Abington, Pennsylvania.

51.     Graves prepared the Contract Documents and provided the same to ACP and/or issued them for bidding on behalf of ACP.

52.     ACP issued the Contract Documents to select contracting companies including Reeves for competitive bidding, inviting these contracting companies to submit bids for construction work on the Project.

E. Allen Reeves, Inc. v. Michael Graves & Associates, Inc.
3:10-cv-01393-MAS-TJB

53. Pursuant to the instructions in the Bid Form, bids were due on June 30, 2005 at 10:00AM.

54. The bid, including Reeves' estimate for the cost of the Project, was prepared by Reeves' estimator, Sam Moore.

### IV. CONSTRUCTION PHASE

#### A. NEGOTIATION OF THE REEVES CONTRACT

55. Reeves was the low bidder for the construction of the Project.

56. ACP selected Reeves as the General Contractor for the Project.

57. The form of this proposed construction contract was the AIA Document A101 entitled "Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum."

58. The weather delay clause was amended.

#### B. THE REEVES CONTRACT

59. Reeves and ACP executed the Reeves Contract dated January 23, 2006.

60. In the Reeves Contract, Reeves agreed to construct the Project for a lump sum cost of $5,698,190.00.

61. The Reeves Contract incorporated other documents by reference including: Exhibit "A," a December 14, 2005 revised proposal from Reeves to Graves; Exhibit "B," Document List, identifying specific drawings and specifications prepared by Graves and incorporated also into the General Contract; Exhibit "C," Stipulated Price Contractor Clarifications; Exhibit "D," Certificate of Liability Insurance; and The 1997 Edition of the AIA Document A201-1997, as edited.

62. Pursuant to Article 4 of the Reeves Contract, Reeves agreed to serve as the General Contractor for the construction of the Project in accordance with the Contract Documents, in exchange for payment from ACP of $5,698,190.00

63. The Reeves Contract required Reeves to substantially complete the Project within 380 days from the date of commencement of work.

64. Performance of a "Constructability Review" was never a part of the bid / construction project pursuant to any form of the Reeves Contract.

#### C. CONSTRUCTION OF THE PROJECT

5

E. Allen Reeves, Inc. v. Michael Graves & Associates, Inc.
3:10-cv-01393-MAS-TJB

65. The Building Permit for the construction of the Project (and not merely for pre-construction demo, site, asbestos removal) was procured on March 23, 2006.

66. The Project should have been substantially complete on April 16, 2007.

67. Al Haibach was the Project Manager for Reeves for the Project.

68. H&R Erecting was the erector for the Project, originally under Dobslaw, and after the termination of Doblaw, was hired directly by Reeves.