IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E. ALLEN REEVES, INC.<br><br>　　　　Plaintiff<br><br>v.<br><br>MICHAEL GRAVES & ASSOCIATES, INC.<br><br>　　　　Defendant | : CIVIL ACTION NO.<br>: 3:10-CV-01393-MAS-TJB |
| MICHAEL GRAVES & ASSOCIATES, INC.<br><br>　　　　Third Party Plaintiff,<br><br>v.<br><br>DAVID CHOU & ASSOCIATES;<br>KELTER & GILLIGO CONSULTING<br>ENGINEERS;<br>FISHER MARANTZ STONE, INC.;<br>THE ARTS COUNCIL OF PRINCETON;<br>SAL ARNONE; JOHN DOES 1-50,<br><br>　　　　Third Party Defendants, | |
| ARTS COUNCIL OF PRINCETON<br><br>　　　　Counterclaimant,<br><br>v.<br><br>MICHAEL GRAVES & ASSOCIATES, INC.<br><br>　　　　Counterdefendant, | |

**MICHAEL GRAVES & ASSOCIATES, INC. MOTIONS IN LIMINE**

1

## TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................................3

A.   MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR PLAINTIFF'S EXPERT FRANK GATLIN FROM TESTIFYING AS TO ANY ALLEGED DAMAGES..................................................................................4

B.   MICHAEL GRAVES & ASSOCIATES, INC.'S NOTICE OF MOTION IN LIMINE TO BAR PLAINTIFF'S CLAIM FOR <u>EICHLEAY</u> DAMAGES........................9

C.   MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR EXPERT TESTIMONY OF KEVIN FOLEY and ALAN HAIBACH ON BEHALF OF PLAINTIFF and TO BAR TESTIMONY OF MARK GERMOND and JEFF NATHANSON ON BEHALF OF ARTS COUNCIL OF PRINCETON AS TO DAMAGES..........................................................................10

D.   MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR DOCUMENTS SERVED BY REEVES AND ACP ON DECEMBER 23, 2013................................................................................................................12

E.   MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR THE ACP LOST PROFITS CLAIM OF ACP..........................................................14

F.   MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR THE ACP CLAIM FOR PSEG AND WATER UTILITY CHARGES...................18

G.   MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR THE REEVES CLAIM FOR LABOR COST ESCALATION................................19

H.   MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO ADDRESS TO RENEW THE MOTION TO DISMISS THE DELAY DAMAGE CLAIMS OF REEVES AND ACP THAT ARE DERIVATIVE OF THE OPINIONS OF THEIR EXPERT NAVIGANT AS NAVIGANT HAS NOT PROVIDED ANY EXPERT OPINIONS TO SUPPORT THAT THE ENGINEERING PORTION OF THE INTEGRATED A/E CONTRACTED DOCUMENTS BREACHED THE PROFESSIONAL STANDARD OF CARE................................................................................20

I.  **INTRODUCTION**

This litigation arises out of a construction project for the expansion and renovation of the Paul Robeson Center for the Arts, located in Princeton, New Jersey.  The Arts Council of Princeton is the owner of the project at issue in this litigation. Defendant Michael Graves & Associates, Inc. contracted with the Arts Council of Princeton to provide architectural and engineering services for the Project.

E. Allen Reeves was hired by The Arts Council of Princeton as the General Contractor for the Project.  E. Allen Reeves and the Arts Council of Princeton have alleged professional negligence against Michael Graves & Associates, Inc.  Defendant seeks an order related to the following issues:

A.  **MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR PLAINTIFF'S EXPERT FRANK GATLIN FROM TESTIFYING AS TO ANY ALLEGED DAMAGES**

Plaintiff has named Frank Gatlin, AIA, NCARB as an expert witness in this matter. Defendant moves in limine to bar any testimony by Gatlin as to any alleged damages incurred by ACP or Reeves, as the opinions presented by Gatlin on damages are impermissible net opinion.

Frank Gatlin of Navigant Consulting, Inc. has provided there (3) separate reports asserting opinions as to Michael Graves & Associates, Inc.  (MGA).  Gatlin's report of October 10, 2012 contained opinions with regard to "Analysis of Damages Incurred by Reeves."  Gatlin reported that "Reeves determined that their total additional general condition costs (labor, non-labor and 3rd party) through May 2008, were $828,456.90" and that "[b]ased on the information provided by Reeves . . . MGA is responsible for the reimbursement of all the additional general condition costs, in the amount of $546,781.55."  (Exhibit "A", p. 46)

In providing his expert opinion as to Escalation Costs, Gatlin found "based on the information provided by Reeves" that "Reeves is due $20,790.95 of the escalation costs from MGA, and the Arts Council is due $81,923 of the escalation costs from MGA that it previously

3

paid to Reeves." (Exhibit "A", p. 47). This opinion was based on the "fact" that "Reeves determined that it incurred an additional $73,704.20 in escalation costs for a total of $155,627.20." (Exhibit "A", p. 47).

Again, with regard to Inefficiency Costs, Gatlin "understands" that there were 5840 labor hours impacted, at an average hourly rate of $65, resulting in total inefficiency costs in the amount of $380,282.50. This opinion was also "based on the information provided by Reeves." (Exhibit "A", p. 47).

As to Additional Home Office Overhead Costs, Gatlin "understands" that Reeves' home office overhead cost was $806 per day and opines a loss of $139,035 to Reeves. No facts or documents were produced to support this claim.

With regard to "Additional Taxes & Insurance Costs" and "Contractor Fee," Gatlin provides no facts to support his calculation of damages in this regard. (Exhibit "A", p. 48).

In Gatlin's review and analysis of damages incurred by Arts Council, he also relies upon "the information provided by Reeves" or "the information provided by Arts Council." (Exhibit "A", p. 49-50). Again, with regard to "Lost Revenue," no factual basis is provided to support the speculative loss of $203,258.42. The opinion of Gatlin was initially based on what the Arts Council "anticipated in revenue for rentals, programs, events and contributions upon the completion of the renovation and addition." (Exhibit "A", p. 50). In his expert report of October 10, 2012, he merely states that "[w]e understand that Arts Council incurred damages in lost revenue for rentals, programs, events and contributions upon the completion of the renovation and the addition." (Exhibit "B", p. 50). Gatlin provides no reference to any documents or other evidence to support this claim.

In a letter dated March 21, 2013, Gatlin corrects "typographical errors" in his October 10, 2012 expert report as to Additional Home Office Overhead Costs claim and Additional General Conditions & Administrative Fee claim. Again, these new calculations are still "based on the

4

information provided by Reeves" and what value Gatlin "understands" to be Reeve's home office overhead.  (Exhibit "B").

Frank Gatlin was deposed on December 16, 2013.  (Exhibit "C").  Gatlin admittedly did not review any of Reeve's financial documents, did not review any of Reeve's labor details and did not review any of Reeve's initial project budgeting materials.  (Exhibit "C", 14:5-19).  Gatlin did not "analyze the costs as to whether they were too high or too low."  (Exhibit "C", 14:20-15:7). Further, Gatlin testified that the information related to Reeves and the ACP damages claims were presented to him verbally by counsel. (Exhibit "C", 62:20-25). He further stated that he wrote the Reeves and ACP finical data down and then threw it out (Exhibit "C", 47:1 to 48:10).

In providing his opinion on Reeve's entitlement to additional compensation, Gatlin "took the costs that were supplied to us by Reeves in terms of their extended general conditions and all the categories listed in my report and did the calculation based on the delay." (Exhibit "C", 15:8-24).  He confirmed that Reeves did not provide any documents to him.  Documents were provided to counsel and "then I would review those documents in terms of whether or not they should or shouldn't be included in the calculation." (Exhibit "C"15:25-16:8).  Gatlin testified that he was provided "a document that explained the damages.  I wasn't retained to do the calculation or I wasn't hired to develop those numbers."  (Exhibit "C", 16:9-17:1).

Gatlin could not identify what documents he relied upon related to Reeve's damages claim.  (Exhibit "C", 17:2-20:10).  Gatlin testified that he relied upon "the calculations that were attached to [Reeves and ACP] mediation statement." (Exhibit "C", 21:4-12).  He recalled seeing a document for the calculation of overhead at $806, however, "he was not charged with taking their documents and vetting them and calculating them." (Exhibit "C", 21:4-12).  He "depended upon what was provided in the mediation statement." (Exhibit "C", 21:14-16).  Gatlin confirmed

5

that all of the numbers used in his expert report "were provided to [him]" and he "did not calculate these numbers." (Exhibit "C", 22:1-19).

      The damages relied upon by Gatlin were drafted by counsel for Reeve's. (Exhibit "C", 34:17-25). Gatlin utilized the document prepared by counsel for Reeves and discussions with Reeves' counsel "became the starting point after mediation to include the damages in [his] expert report." (Exhibit "C", 38:7-25). Gatlin testified that he did not "recall exactly how that information was imparted to [him], because we were having numerous meetings in terms of developing the damages. I know that when we went through the whole process I was very careful about how <u>those damages were calculated by others</u>, and I had lots of questions about how those damages came about and what was the back-up for those numbers." (Exhibit "C" 42:7-22). (Emphasis added).

      Gatlin confirmed that he did not perform any calculations with regard to the $828,456.90 Extended General Conditions damages claim and did not have any documents in his project file to support that number. (Exhibit "C", 44:1-45:25). He "could not recall" how he obtained the $828,456.90 number contained in his expert report. (Exhibit "C", 53:18-25).

      Gatlin based his opinion of $380,282.50 in Inefficiency Costs on plaintiff's counsel's representation. (Exhibit "C", 55:22-56:10). In providing his damages opinion on Direct Costs of $271,486.91, Gatlin "[thought] at that period of time that [he] was looking at summaries of costs that were calculated. . . it was the listing of the different costs on a piece of paper, and that was the number that was included in that." (Exhibit "C", 59:9-24). Gatlin confirmed that the information provided to him related to Reeves and the Arts Council damages claims was presented to him verbally by counsel. (Exhibit "C", 62:20-25). He also confirmed that he was not aware who prepared the calculations, which were presented to him. (Exhibit "C", 63:1-3). However, he was aware of the author of the calculations and "it was Cohen Seglias." (Exhibit "C", 63:10-64:9).

6

Gatlin did not recall what he relied upon in presenting a Tools and Equipment damages claim of $169,700 and the exhibits relied upon were in the amounts of $10,144.18 and $9,547.50. He could not explain where the other $149,000 came from. (Exhibit "C", 73:1-20).

As to Escalation costs, Gatlin relied upon the $73,704.20 number provided to him by Cohen Seglias, however, he did nothing to verify that amount as "that wasn't part of my scope of work." (Exhibit "C", 99:3-100:1).

This Court's Case Management Order of January 22, 2013 provided "[n]o expert shall testify at the time of trial as to any opinions, nor base those opinions on facts, not substantially disclosed in any report . . ." (Exhibit "D"). No facts were disclosed in Gatlin's report other than "information supplied" by Reeves or ACP. Gatlin's reports and deposition testimony confirm that no independent analysis was performed and Gatlin's "expert opinion" on damages is not based on any facts. As such, any testimony by Gatlin or anyone else at Navigant must be barred as being net opinion.

In diversity cases, as in the subject case, admissibility of expert testimony is governed by the Federal Rules of Evidence. 1836 Callowhill Street v. Johnson Controls, Inc., 819 F.Supp. 460 (E.D.Pa. 1993). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case.

Fed.R.Evid. 702.

The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met. See Fed.R.Evid. 702, Advisory Committee Notes; Bourjaily v. U.S., 483 U.S. 171 (1987). In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Court charged trial judges with the responsibility

7

of acting as gatekeepers to exclude all unreliable expert testimony, and the Court in <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), clarified the holding stating that the <u>Daubert</u> decision and the gate keeping function applies to all expert testimony, not just that which is based on science.

In order to qualify as an expert witness, the expert's testimony must be relevant and assist the trier of fact in its determination of the issue(s) in dispute.  <u>Wartsila NSD North America, Inc. v. Hill Intern., Inc.</u>, 299 F.Supp.2d 400 (D.N.J. 2003).  Expert opinions should be excluded when they are based on assumptions that are speculative and are not supported by the record.  <u>Collier v. Varco-Pruden Bldgs et al.</u>, 911 F.Supp. 189 (D.S.C. 1995).

Under <u>Daubert</u>, expert testimony that lacks a "reliable foundation" must be excluded.  <u>Daubert</u>, 509 U.S. at 597.  The proffered testimony "must be supported by appropriate validation – i.e., 'good grounds,' based on what is known."  <u>Id</u>. at 590.  It must be shown that the "reasoning or methodology properly can be applied to the facts in issue."  <u>Id</u>. at 592-93.  The point is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  <u>Kumho</u>, 526 U.S. at 152.  This is crucial, as the Court has recognized that "conclusions and methodology are not entirely distinct from one another."  <u>General Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997).  Expert opinions that are based on facts that are indisputably wrong will not advance the express goal of assisting the trier of fact.  <u>Guillory v. Domtar Industries, Inc.</u>, 95 F.3d 1320 (5th Cir. 1996).

Here, Frank Gatlin is not qualified to testify as an expert witness at trial with regard to any damages sustained by Reeves or ACP.  He is an architect.  He admittedly relied only on information provided by Reeves, ACP and/or their counsel.  Gatlin admittedly performed no independent analysis of the damages claims and testified that this was not part of the scope of his work.  Gatlin's report and anticipated damages opinions do not meet the standards set forth in

Daubert and Kumho for expert testimony and any expert opinion by Gatlin related to damages must be barred.

For the foregoing reasons, MGA respectfully requests that this Court preclude Reeves and/or ACP from offering Frank Gatlin as an expert witness at trial related to damages.

B. **MICHAEL GRAVES & ASSOCIATES, INC.'S NOTICE OF MOTION IN LIMINE TO BAR PLAINTIFF'S CLAIM FOR EICHLEAY DAMAGES**

Eichleay damages are not recoverable in this matter. "In addition to a contractor's direct costs, which arise solely because of and attributable directly to performance of a specific contract, a government contractor incurs indirect costs which are not attributable to one contract in particular but arise because of its general operations." Williams Construction, Inc. v. White, 326 F.3d 1376, 1379 (Fed. Cir. 2003). (Emphasis added). Recovery under the Eichleay formula is an extraordinary remedy designed to compensate a contractor for unabsorbed overhead costs that accrue when contract completion requires more time than originally anticipated because of a government-caused delay. Id. (Emphasis added). This matter does not involve any alleged "government-caused delay" and plaintiff is not a "government contractor."

The use of the Eichleay Formula depends on proof of three elements: 1) occurrence of a government-imposed delay; 2) a requirement, by the government, that the contractor "standby" during the delay; and 3) while "standing by," the contractor was unable to take on additional work. Mech-Con Corp. v. West, 61 F.3d 883, 886 (Fed. Cir. 1995). When a government-imposed delay is uncertain in duration and the contractor is required to remain ready to resume work on short notice, i.e., "standby," the "contractor is effectively prohibited from making reductions in home office staff or . . . taking on additional work." Interstate Gen. Gov't Contractors v. West, 12 F.3d 1053, 1057 to 1058 (Fed. Cir.1993).

Plaintiff has taken the position that there is a federal case, which holds that there is no governmental limitation on this claim. However, the case of Vanalt Electrical v. Selco does not support this position. 233 Fed. Appx. 105 (3rd Cir 2007). That decision was not precedential. In

9

addition, the Third Circuit did not reach the issue of whether Vanalt's damages may properly be calculated using the Eichleay formula because the court vacated the damages award on other grounds.  Vanalt Electrical v. Selco, 233 Fed. Appx. 105, 113 (3rd Cir. 2007).  The court stated "while we reject Selco's argument that the Eichleay formula may only be used in disputes involving government contracts, the District Court should make a determination on the record whether Vanalt has established the prima facie elements to support the use of the Eichleay formula in the present case."  Id.  This non-precedential case does not support plaintiff's position in this matter.

These damages are also not recoverable in this matter as plaintiff fails to meet either of the two (2) prerequisites to application of the Eichleay formula to recover alleged unabsorbed overhead caused by government delay.  The Plaintiff must prove that it was on standby for an indefinite period of time and could not find replacement work.  Plaintiff must establish that it was "on standby."  Id. "The proper standby test focuses on the delay or suspension of contract performance for an uncertain duration, during which a contractor is required to remain ready to perform."  Id. at 1380.  Plaintiff has not established that it was on "stand-by" as performance of the work was not suspended or significantly interrupted during the period in question.  Plaintiff also failed to establish that it was unable to do any work at all on the contract, but still required to remain able to resume work on short notice.  Id.

In fact, ACP continually paid Reeves its progress payments throughout the project and paid additional general conditions and escalation costs to Reeves.

Based upon the foregoing, MGA respectfully submits that Eichleay damages are not recoverable by plaintiff in this matter and that these claims must be barred at trial.

C. **MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR EXPERT TESTIMONY OF KEVIN FOLEY and ALAN HAIBACH ON BEHALF OF PLAINTIFF and TO BAR TESTIMONY OF MARK GERMOND and JEFF NATHANSON ON BEHALF OF ARTS COUNCIL OF PRINCETON AS TO DAMAGES**

Reeves and Arts Council of Princeton must be barred from eliciting expert damages testimony from their fact witnesses. Defendant's Motion in Limine barring Reeves from calling Kevin Foley and Alan Haibach as experts must be granted because plaintiff failed to provide expert reports as required by the Federal Rules of Civil Procedure R. 26(a) (2). Likewise, Arts Council of Princeton should be barred from calling Mark Germond and Jeff Nathanson as experts as no expert reports were produced with regard to these individuals.

The Federal Rules of Civil Procedure 26(a) (2) requires a party to disclose the names of potential experts at least 90 days before trial. Additionally, Rule 26(a) (2) requires that the party provide a written report prepared and signed by the witness. See Fed.R.Civ. P. 26(a) (2) (B). The Joint Final Pre-trial Order does not list any of these witnesses as experts. Pursuant to Federal Rules of Civil Procedure 16(e), the Joint Final Pretrial Order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice. The Third Circuit noted that there are four main factors to consider when determining whether to amend the Final Pretrial Order to include additional witnesses: (1) prejudice or surprise in fact to the nonmoving party; (2) ability of that party to cure the prejudice; (3) extent to which waiver of the rule would disrupt the orderly and efficient trial of the case; (4) bad faith or willfulness on the part of the movant. Meyers v. Pennypack Woods Home Ownership Ass'n., 559 F.2d 894, 905 (3d Cir. 1977). Other considerations include the ability of the movant to have discovered witnesses earlier, the validity of the excuse offered by the party, and the importance of the proffered testimony. Id. at 904. The Court should take these factors into consideration when determining whether granting the amendment is necessary to "prevent manifest injustice" to the movant. See Scopia Mortgage Corp. v. Greentree Mortgage Co., L.P., 184 F.R.D. 526 (D.N.J. 1998).

In Scopia, supra, plaintiff sought leave to amend the Final Joint Pretrial Order to enlarge the testimony of their expert's testimony to cover issues to which the expert previously did not

11

have any opinions. Judge Simandle denied the request. The Court held that there was not any reason which this expert could not have formed his opinions during the discovery period and before the entry of the Final Pretrial Order, and thus denied the plaintiff's Motion to amend.

In this case, neither Reeves nor ACP identified Foley, Haibach, Germond nor Nathanson as expert witnesses. As a result, none of these witnesses are permitted to provide expert opinion on any alleged damages at trial.

In this case, neither Reeves nor ACP identified Foley, Haibach, Germond nor Nathanson as expert witnesses. As a result, none of these witnesses should be permitted to provide expert opinion on any alleged damages at trial.

Based upon the foregoing, MGA respectfully submits that Foley, Haibach, Germond nor Nathanson should not testify as to damages as trial and should be bound to their deposition testimony.

D. **MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR DOCUMENTS SERVED BY REEVES AND ACP ON DECEMBER 23, 2013**

By letter, dated December 18, 2013, Reeves and ACP served a supplemental document production. The letter and documents were received by MGA on December 23, 2013. (Exhibit "E"). This production was received seven days <u>after</u> the last expert deposition was completed and over one (1) year after the November 15, 2012 deposition of Kevin Foley, the Reeves designated representative with knowledge of the Reeves damages claims. This production was also over one (1) year after the deposition of Mark Germond on October 23, 2012, the ACP designated individual with knowledge of the ACP damages claims. The submission was delivered to MGA one week after plaintiff's damages expert Frank Gatlin's deposition on December 16, 2013.

The ACP production contained 1,999 individual electronic files that had not previously been produced in discovery. The Reeves document production contained 3,923 individual

electronic files. Of these files, 1,855 had not been produced in discovery. This untimely document production contained the backup documents for the Reeves and ACP damages claims. Defendant MGA immediately objected to the attempted supplemental production. (Exhibit "F").

Defendant request an order barring the use of any documents by Reeves and/or ACP at trial (and by the witness testifying as to damage) which were produced by letter dated December 18, 2013 and had not been previously disclosed. Plaintiff and ACP were required pursuant to Federal Rule of Civil Procedure 26 (a)(1)(A)(iii) to include in their Initial Disclosure "a computation for each category of damages claimed by the disclosing party" and "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." "A party is not excused from making its disclosures because it has not fully investigated the case. . . " Fed. R. Civ. P. 26(a)(1)(E). In addition, plaintiff and ACP were required to supplement those disclosures and discovery responses in a timely fashion pursuant to Fed. R. Civ. P. 26 (e)(1)(A). Rule 16 "scheduling orders are at the heart of case management" and cannot "be flouted." Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3d Cir. 1986).

Any introduction of the documents held by Reeves and ACP until after paper discovery, fact witness depositions and experts depositions must be barred. Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(A). The Third Circuit has recognized that even where the sanction amounts to dismissal of a claim, exclusion can be appropriate. Ware v. Rodale Press, Inc., 322 F.3d 613, 721 (3d Cir. 2003). Reeves and ACP are personally responsible for not complying with their Rule 26 disclosures. No explanation is offered by these parties as to why thousands of discoverable documents were withheld. The prejudice to MGA is clear, particularly since these documents were produced after Reeves and ACP's damages expert Gatlin was deposed and more than a year after their damages fact witnesses were deposed. MGA could not question the

witness on the contents of the documents. MGA was further prejudiced in not having the opportunity to have its own expert analyze the documents produced in December of 2013.

MGA respectfully requests that all documents produced by Reeves and ACP in December of 2013, which were not previously produced during fact discovery, be barred at trial.

E.  **MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR THE ACP LOST PROFITS CLAIM OF ACP**

The appropriate measure for damages for lost profit is net profit, not gross profit. ACP should not be permitted to introduce evidence pertaining to lost gross profits. Only lost "net" profits are allowed as damages. Lost "net" profit is computed, in general, by estimating the gross revenue that would have been earned but for the wrongful act reduced by the costs incurred to generate the gross income. ACP, by its own admission has presented an inaccurate and overstated claim for lost profits. The ACP claim for lost profits are remote, uncertain or speculative, at best. The claim for lost profits does not comply the requirements of ACP's own accounting requirmeents and the requirements of the case law.

More importantly, ACP has not presented a damages report containing the required calculations of its methodology related to its projected gross revenues, nor has it produced in the discovery period any documents related to the actual expenses for the delay period. In fact, ACP produced a single document (contained within its Mediation Statement) that defines its gross revenue for the delay period and by its own admission has not prepared a profit and loss statement demonstrating their lost profits.

The document produced is entitled Robeson Cost Escalation Analysis, dated July 17, 2008. (Exhibit "G"). Section IV of this document, indirect costs, simply lists the four categories of revenue it claims were reduced by the delay in the occupancy of the building. The categories are Rental, Programs, Events and Contributions. This bare bones listing is all that was provided to support its claim. ACP produced no document that details what the sources of revenues for

each of these categories was anticipated to be. The jury cannot be expected to take this information as fact without explanation.

ACP provided no backup data as to how the anticipated revenue were calculated. ACP does not list the names or parties that it anticipated would rent their space; it provides no listing of events that occurred and those that were planned and canceled; it does not list the sources of its anticipated contributions and does not identify the sources that did not contribute.

The testimony of Mark Germond, the individual identified by ACP as the individual designated to present its damages at trial testified that his approach to calculating lost revues was not in conformance with ACP accounting procedures and was not actually a lost revenue calculation.

Mack Germond testified that:

Q. Okay. Do you normally adjust your revenue with your expenses?

A. How do you mean?

Q. Well, you have revenue?

A. Yes.

Q. And then there's a cost to generate that revenue?

A. Correct.

Q. Salaries, utilities, you name it, you probably know more than I do?

A. So you come out --

Q. whole litany of things.

A. You come out with a bottom line profit.

Q. Right. Is there a particular reason why you're using your total anticipated revenue as, without including an offset of the expenses?

A. No.

Q. If you included your expenses, would that have reduced your anticipated revenue?

15

> A. No, the revenue number would have stayed the same.
>
> Q. Okay. But that your, your profit would have been your revenue minus your expenses?
>
> A. As always.
>
> Q. Okay. So why didn't you include that formula here instead of utilizing -- well, in the alternative, you're utilizing your total projected gross revenues?
>
> A. It wasn't a profit and loss statement that we wanted to show. It was merely something that we wanted to reflect revenue only.
>
> Q. Okay. Is this a type of document, is this how you present your budget to the executive committee and the Board of Directors or do you include anticipated expenses as well?
>
> A. Yes.
>
> Q. Do you ever just tell them this is our anticipated gross revenue and leave it at that?
>
> A. No.
>
> Q. Okay. Do you always include your expenses?
>
> A. Always.
>
> Q. And do you always include -- well, what do you call that, it's a --
>
> A. It's a profit and loss statement.
>
> Q. And do you always present -- show them the profit and loss -- the anticipated profits and/or losses that you may incur?
>
> A. Yes.
>
> (Exhibit "H", 124:20 to 126:4).

Mr. Germond also testified that the ACP would present reports to the Board of Directors that presented the Net Profit (loss) as operating income, minus operating expense. (Exhibit "I"). This support the inaccurate and misleading calculations that Mr. Germond testified to.

New Jersey courts have uniformly required a "reasonably accurate and fair basis for the computation of alleged lost profits." <u>J.L. Davis & Assocs. v. Heidler</u>, 263 N.J. Super. 264, 276

16

(App. Div. 1993). As part of this requirement, "anticipated profits that are remote, uncertain or speculative, however, are not recoverable. Perth Amboy Iron Works, Inc. v. American Home Assurance Co., 226 N.J. Super 200, 224 (App. Div. 1988); see also American Sanitary Sales Co. v. New Jersey, 178 N.J. Super. 429, 435 (App. Div. 1981) (Noting that while "it would be a travesty to deny a plaintiff essential justice because the absence of means of precision precludes perfect justice", a court cannot allow claims to be heard by the jury if it entails them to engage in "mere speculation"). Accordingly, courts have dismissed damage claims that are speculative and provide no reasonable basis for a jury to determine the alleged lost profits. Bell Atlantic Network Services, Inc. v. P.M. Video Corp., 322 N.J. Super 74, 101 (App. Div. 1999) (emphasis added).

Lost profits "may be recoverable if they can be established with a 'reasonable degree of certainty.'" Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 23 F. Supp. 2d 509, 515 (D.N.J. 1998). In this matter, the ACP has provided no report that defines its methodology nor has it provided the backup documents, showing how it calculated it anticipated revenues.

More importantly, the appropriate measure of damages with respect to future lost profits is net profits, not gross profit. "Lost profits" signifies the difference between gross income and the costs or expenses, which had to be expended to produce the income. Proof of the relevant costs or expenses is not a matter of mitigation. It is part of the damage case of the party seeking recovery for lost profits. Borough of Fort Lee v. Banque Nat. de Paris, 311 N.J. Super. 280, 296 (App.Div. 1998) (emphasis added); citing J.L. Davis & Associates v. Heidler, 263 N.J.Super. 264, 275-77, 622 A.2d 923 (App.Div.1993).

As indicated above, during his deposition, Mark Germond testified that he did not prepare a profit and loss statement. The Court in Deaktor v. Fox Grocery Co., 475 F.2d 1112, 1116 (3d Cir.), cert. denied, 414 U.S. 867, 38 L. Ed. 2d 86, 94 S. Ct. 65 (1973), stated that:

> "plaintiffs' failure to produce evidence concerning the factors essential to establish net profit as opposed to gross profit, in effect, meant that the jury would have had to speculate as to the amount of damages." To make such a computation, the plaintiff must present the jury with evidence of

17

>projected profits, and present and future costs (citing <u>Borough of Fort Lee v. Banque National de Paris</u>, 311 N.J. Super. 280, 296, 710 A.2d 1 (N.J. Super. App. Div. 1998) ("'Lost profits' signifies the difference between gross income and the costs or expense which had to be expended to produce the income.").

The ACP has presented its claims for lost profits in a speculative manner and in a manner that that is inconsistent with its internal accounting procedures and in a manner that is legally insufficient. ACP is aware of its expenses and intentionally opted to avoid making the required accounting for its expenses. Loss includes "costs or expense which had to be expended to produce the income. <u>Borough of Fort Lee v. Banque National de Paris</u>, 311 N.J. Super. 280, 296 (App. Div. 1998) .

The ACP should be barred from presenting evidence as to lost damages due to the speculative nature and its conceded flaw in its methodology.

F.  **MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR THE ACP CLAIM FOR PSEG AND WATER UTILITY CHARGES**

ACP is claiming 100% percent of its costs related to its PSE&G costs ($28,408.84)[1] and 100% for its water bill (1,019.00)[2] for its water costs in it temporary facility. However, these costs are overstated and not recoverable as presented. Had the ACP occupied the new facility as planned, ACP would have been obligated to pay for these services regardless of any delay. ACP did not cease its operation during the construction of the new facility. It moved to a temporary location and operated from there. ACP paid these costs at a temporary facility, but avoided the costs at the new facilities. The measure of damages is not the amount paid. Rather the calculation must include the savings in the value of the avoided cost of paying the utilities and water during the occupancy the new building.

ACP records show that in its fiscal year 2008 to 2009, the first year of occupancy of the new facility, its utility costs were $45,548.00 and $2,483.00 for water. (Exhibit J"). These are

---

[1] Based upon Mark Germond's presentation of the ACP Revised Audit Amount,
[2] Based upon Mark Germond's presentation of the ACP Revised Audit Amount

expenses that ACP would have been forced to incur regardless of the delay of the opening of the new building.

The Court in the <u>Borough of Fort Lee v. Banque National de Paris</u>, 311 N.J. Super. 280, 296, 710 A.2d 1 (N.J. Super. App. Div. 1998) was clear that that the cost or expenses, which had to be expended to produce the income are required to be included in the calculations. As indicated above, the actual costs of the utilities and water for the new building exceed the amount paid during the ACP's occupancy of the temporary facility. In reality, ACP experienced a reduced expense for utilities and water.

MGA seeks to bar the ACP claims for the cost of utilities and water, as it would have incurred that expenses regardless of the delay.

G. **MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO BAR THE REEVES CLAIM FOR LABOR COST ESCALATION**

Reeves is seeking to recover $20,790.95 for its claim of Labor Cost Escalation. Mr, Kevin Foley, the Reeves Chief financial Officer, and the Reeves designated individual to present evidence on Reeves damages testified that he did not prepare the Labor Cost Escalation calculation and was not aware that Reeves had increased its rates. Mr. Foley testified that:

> Q. Have you ever seen this document before?
>
> A. I believe I did see this document, but I really don't recall the context.
>
> Q. Do you know who created the document?
> A. I do not, no.
>
> Q. What is this document?
>
> A. Well, this says labor escalation costs for April 1st of 2007 until 18 December 30th of 2007.
>
> Q. Did Reeves increase its rate during that time period?
>
> A. I do not know that we were charging a different rate at any different time on this project. But this seems to be a set of calculations for an increase in rates in the admin, carpenter, project management, and superintendent categories.

19

Q. And again, that's their -- $65 for the carpenters is not their -- that's Reeves' change order rate?

A. That would be the change order rate.

Q. That's not their normal rate.

A. Yes, that is the change order rate.

(Exhibit "K", page 127:3 to 128:9)

In tort cases, profits which are remote, speculative or uncertain are neither an element of damages nor evidence of damages. Woschenko v. C. Schmidt & Sons, 2 N.J. 269, 278-279 (1949). Reeves claim for Labor Cost Escalation costs are illusory, as Mr. Foley could not confirm a rate increase. Therefore, this claim is meritless as no increase actually occurred.

MGA seeks to bar any testimony related to Reeves claims for Labor Cost Escalation as the rate increase did not actually occur.

H. **MICHAEL GRAVES & ASSOCIATES, INC.'S MOTION IN LIMINE TO ADDRESS TO RENEW THE MOTION TO DISMISS THE DELAY DAMAGE CLAIMS OF REEVES AND ACP THAT ARE DERIVATIVE OF THE OPINIONS OF THEIR EXPERT NAVIGANT AS NAVIGANT HAS NOT PROVIDED ANY EXPERT OPINIONS TO SUPPORT THAT THE ENGINEERING PORTION OF THE INTEGRATED A/E CONTRACTED DOCUMENTS BREACHED THE PROFESSIONAL STANDARD OF CARE.**

This motion was denied with without prejudice, due to the requirement of the testimony of the Navigant Experts. The motion was previously filed.

Respectfully submitted,

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

By: /s/ Raymond J. Michaud
_____
Raymond J. Michaud

Dated: October 10, 2014