**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| E. ALLEN REEVES, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 10-1393 (MAS) (TJB) |
| MICHAEL GRAVES & ASSOCIATES, INC., | **OPINION & ORDER** |
| Defendant. | |

**SHIPP, District Judge**

This case involves a dispute over the relative responsibility for delays and costs incurred during the renovation of a building in Princeton, New Jersey. Plaintiff E. Allen Reeves, Inc. ("Plaintiff"), a general contractor, brings suit against Michael Graves & Associates, Inc. ("Defendant"), an architecture and design firm, asserting a claim for negligent misrepresentation under Restatement (Second) of Torts, Section 552. The Arts Council of Princeton ("Arts Council"), owner of the building in question, engaged Defendant to provide architectural and design services involving the renovation of a multi-purpose center referred to as the Paul Robeson Center ("Project"). Reeves, the general contractor on the Project, claims that it incurred damages as a result of Defendant's negligence. The Arts Council, having been brought into the case as a third-party defendant,[1] asserts a third-party counterclaim against Defendant for breach of contract.

---

[1] The third-party claims brought against the Arts Council have been dismissed with prejudice. (ECF No. 211.)

Both Plaintiff and the Arts Council contend that Defendant's conduct caused their alleged damages.[2]

The parties move *in limine* to resolve various issues in advance of trial. Plaintiff has filed seven motions, and Defendant has filed eight. Because the parties are intimately familiar with the procedural history and factual background of this matter, the Court will not provide additional background in this opinion.

## I.     Plaintiff's Motions

### A.     Liquidating and Cooperation Agreement Between Plaintiff and Arts Council

Plaintiff's first motion *in limine* seeks to bar introduction of an agreement between Plaintiff and the Arts Council.   This agreement, termed a Liquidating and Cooperation Agreement ("Cooperation Agreement"), settled claims between Plaintiff and the Arts Council and defined certain rights and responsibilities between them, both during and after the present litigation. Plaintiff asserts two discrete grounds for exclusion. First, Plaintiff contends that the agreement is not relevant and may confuse the jury.  Second, Plaintiff asserts that the agreement constitutes inadmissible evidence of compromise under Rule 408.  Defendant counters, stating the agreement is offered for the limited purpose of showing bias on the part of the Arts Council, its employees, and agents.

As an initial matter, the Court disagrees with Plaintiff that the agreement is not relevant or that any danger of confusion outweighs its probative value. *See United States v. Abel*, 469 U.S. 45, 50-51 (1984) (holding that evidence capable of showing bias is relevant).  Yet, Rule 408 bars evidence of settlement and compromise for the purposes of proving liability or amount of damages,

---

[2] Because of the substantial identity of positions of Plaintiff and the Arts Council (indeed, they share counsel and have jointly filed the *in limine* motions at issue), for the sake of simplicity, the Court will only refer to Plaintiff as the moving and defending party.

even in the context of a settlement with a third-party. *See Commodities Futures Trading Comm'n v. Rosenberg*, 85 F. Supp. 2d 424, 434 (D.N.J. 2000); *Vincent v. Louis Marx & Co.*, 874 F.2d 36, 42 (1st Cir. 1989), *abrogated on other grounds by Harlow v. Chin*, 545 N.E.2d 602, 606 (Mass. 1989); *U.S. v. Contra Costa Cnty. Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982).   Rule 408 bars evidence of compromise in order to encourage compromise, "which would be discouraged if such evidence were admissible." *N.J. Turnpike Auth. v. PPG Indus., Inc.*, 16 F. Supp. 2d 460, 473 (D.N.J. 1998), *aff'd*, 197 F.3d 96 (3d Cir. 1999).   On the other hand, courts have admitted very similar evidence for the limited purpose of showing a witness's bias. *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 635 (3d Cir. 1977). In *McShain*, the Third Circuit approved of the trial judge's admittance of a third-party settlement for the purposes of impeaching a witness and to show bias. *Id.* There, plaintiff sued an airplane manufacturer in connection with an alleged design defect; prior to bringing suit, plaintiff negotiated a release with the company that repaired the plane in exchange for a nominal fee and the right to hire, as an expert, an employee of a related company. *Id.* at 634. The Third Circuit held that the trial court did not err by admitting the agreement for the purpose of showing the expert witness's potential bias. *Id.*

The Court finds the *McShain* decision directly on point.  The Cooperation Agreement contractually obligates the Arts Council to cooperate and assist Plaintiff in obtaining the maximum recovery against Defendant.  Its admission is relevant to potential bias on the part of the Arts Council, and as recognized by the *McShain* court, the admission of the Cooperation Agreement for this limited purpose does not harm the purposes underlying the rule against admission of compromises. *See id.* at 635 n.5. Accordingly, the Court denies Plaintiff's motion only insofar as it seeks to bar introduction of the Cooperation Agreement when admitted solely for impeachment purposes and to demonstrate bias on the part of the Arts Council, its employees, or its agents.

Consequently, evidence of the Cooperation Agreement is barred when offered for any other purpose.

## B.    Health Issues of Randall Dobslaw

Plaintiff moves to exclude evidence of Randall Dobslaw's physical and mental health. Randall Dobslaw ("Dobslaw") is the owner of Dobslaw, Inc., a subcontractor engaged by Plaintiff to work on the Project.  Plaintiff asserts that Dobslaw's health is irrelevant and prejudicial. Defendant asserts that Dobslaw's health is directly relevant to whether it adequately performed as a subcontractor on the Project: if Dobslaw was distracted by health issues or suffered from memory loss, it may have affected his job performance.  Plaintiff counters, asserting that Defendant may simply introduce evidence of his job performance rather than introduce prejudicial evidence related to his health.

The Court agrees that evidence of Dobslaw's health is directly relevant to his performance as a subcontractor on the Robeson Center.  "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action."  Fed. R. Evid. 401.  The standard for relevance is whether the evidence will assist the fact-finder: "[e]vidence need not prove conclusively the proposition for which it is offered, nor make that proposition appear more probable then [sic] not, but it must in some degree advance the inquiry."  2 Jack B. Weinstein et al., Weinstein's Federal Evidence §401.04(2)(b) (Joseph M. McLaughlin ed., 2d ed. 2014) (citing *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 545 (3d Cir. 2007)).  Here, evidence of Dobslaw's poor health may tend to show that his work as a subcontractor suffered.  Aside from the conclusory assertion that this evidence is "prejudicial" and "inflammatory," Plaintiff offers no concrete basis for its exclusion.  Merely because there may

4

be other evidence tending to show that Dobslaw did not perform adequately does not render this evidence inadmissible. Accordingly, Plaintiff's motion to exclude this evidence is denied.

### C. Settlement Between Defendant and Arts Council

Plaintiff also seeks to bar evidence of the settlement resolving Defendant's affirmative claims against the Arts Council ("Settlement Agreement"). Plaintiff contends that introduction of the Settlement Agreement would violate Rule 408, which bars evidence of compromise; that the settlement of claims between Defendant and the Arts Council is irrelevant to Defendant's liability to Plaintiff; and that the Settlement Agreement is by its own terms confidential. Defendant argues that it is premature to determine the admissibility of the Settlement Agreement; as the trial progresses, its introduction may be proper under one of the exceptions to the prohibition in Rule 408.

Plaintiff's request to bar evidence of Defendant's third-party settlement with the Arts Council is granted. As discussed, Rule 408 bars evidence of compromise with third parties for the purposes of proving liability or amount of damages. *See supra* Section I.A. Here, admission of the Settlement Agreement might tend to suggest fault on the part of the Arts Council and would contravene the policies undergirding Rule 408. *See PPG Indus.*, 16 F. Supp. 2d at 473. In contrast with the Cooperation Agreement, the Settlement Agreement does not contain any litigation strategy obligations; rather, it is a pure exchange of money for the release of liability and dismissal of claims. Defendant's assertion that a basis for admission might develop does not change the Court's calculus. The Court does not contemplate any potential basis for admission, and Defendant's inability to identify a basis cannot save the document from being adjudged inadmissible. For these reasons, Plaintiff's motion to exclude evidence of the Settlement Agreement is granted.

## D.      Opinion of Steven Roberts

Plaintiff moves to exclude opinion evidence of Steven Roberts ("Roberts"), an employee of a subcontractor engaged by Plaintiff. Roberts' firm was hired by Plaintiff to replace Dobslaw, Inc. Specifically, Plaintiff seeks to exclude the opinion of Roberts as it relates to work done by Dobslaw, Inc. on certain shop drawings. Roberts will purportedly testify that Dobslaw, Inc.'s drawings were inadequate and were thus discarded. Plaintiff asserts that Roberts' opinions regarding these drawings lack factual foundation, are prejudicial, are a waste of time, and constitute improper expert testimony as Roberts has not been identified as an expert in pretrial submissions. Defendant argues that, although not qualified as an expert, Roberts should be permitted to testify as to what occurred with respect to the use or nonuse of the Dobslaw, Inc. drawings and Roberts' assessment and reasons for rejecting them.

Under Rule 701, lay opinion testimony must be "rationally based on the witness's perception," helpful to the factfinder, and not based on expert knowledge "within the scope of Rule 702." Fed. R. Evid. 701. Rule 701(c), the subsection that precludes lay testimony based on expert knowledge, was added to Rule 701 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Id.*, 2000 Advisory Committee Note. However, simply because a witness's testimony involves some specialized expertise does not mean the witness must be qualified as an expert prior to testifying. "When a lay witness has particularized knowledge by virtue of [his] experience, [he] may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702." *Donlin v. Phillips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009).

6

Here, Roberts is to testify as to his personal involvement with the Dobslaw, Inc. drawings. Insofar as Roberts' testimony concerns his own attempts to use the drawings, or his inability to use the drawings, that testimony will not violate Rule 701(c), as it relates solely to Roberts' personal knowledge of the drawings and his experience with them. However, any testimony that goes beyond Roberts' general basis for rejecting the shop drawings, *i.e.*, that is not based on his own perception, is barred absent expert qualifications. *See Ghee v. Marten Transp., Ltd.*, 570 F. App'x 228, 230 (3d Cir. 2014) ("Where, as here, a lay witness's opinion testimony is based on sufficient experience or specialized knowledge and a sufficient connection exists between such knowledge and experience and the lay opinion, that opinion should be admitted because it may be fairly considered to be rationally based on the perception of the witness and truly helpful to the jury." (internal quotation marks omitted)).

The Court does not find merit in Plaintiff's other proffered bases for rejecting Roberts' testimony. As a result, Plaintiff's motion is denied in accordance with the above qualifications.

### E.     Character Evidence of Sal Arnone

Plaintiff seeks to exclude character evidence of Sal Arnone that tends to describe Arnone as a misogynist. Defendant does not oppose the motion. Accordingly, Plaintiff's motion to exclude character evidence tending to cast Arnone as a misogynist is granted.

### F.     Expert Testimony of James McKay, A.I.A., P.E.

Plaintiff moves to exclude certain subjects from the testimony of Defendant's witness, James McKay, who Defendant offers as an architectural expert. More specifically, Plaintiff seeks to bar McKay from testifying as to: (1) opinions concerning the practice of architecture in New Jersey; (2) the respective responsibilities of the parties with regard to project delays; (3) any

opinions grounded in legal conclusions, or regarding the interpretation of contract provisions; and (4) opinions related to the coordination of mechanical, electrical, and plumbing subcontractors.

### 1.    Architecture in New Jersey

Plaintiff seeks to bar McKay from testifying "as to any matter touching on specifics of architectural practice in New Jersey, including but not limited to whether Graves has fulfilled the requirements and met the" relevant standards of care at issue.  (Pl.'s Br. 16, ECF No. 219-1.) Plaintiff asserts that McKay, who does not possess a license to practice architecture in New Jersey, is unqualified and should not be permitted to offer his opinion regarding standards and practices in the field of architecture in the state.  Defendant opposes Plaintiff's request, asserting that a license is not the *sine qua non* to qualify as an architectural expert and that McKay otherwise qualifies.

Plaintiff challenges McKay's qualification as an architectural expert based solely on his unlicensed status in New Jersey.   A witness may be "qualified as an expert" if he possesses "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.   This requirement is interpreted liberally, see *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) ("*Paoli I*"), and this "liberal policy of admissibility extends to substantive as well as the formal qualification of experts," *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("*Paoli II*").  Accordingly, general qualifications, rather than specific formal qualifications, are often sufficient.  *Id.*  Excluding a preferred expert witness on grounds of an experiential qualification alone is an abuse of discretion.  *Paoli I*, 916 F.2d at 855-56.

For the above reasons, the Court denies Plaintiff's motion insofar as it seeks to bar the testimony of McKay solely on the basis that he does not possess an architectural license in New Jersey.

8

## 2.      Project Delays

Plaintiff moves to bar those portions of McKay's testimony that may touch on delays to the Project because (1) McKay is not qualified to opine on the topic and (2) his testimony on the subject is unreliable because he has not prepared his own project schedule analysis. The Court will address each contention in turn.

Plaintiff asserts that McKay is not qualified to testify regarding construction schedule analysis and, more specifically, to testify as to deficiencies in the schedule analysis of Plaintiff's expert, Emily Federico, P.S.P., of Navigant Consulting, Inc. Plaintiff has not provided a sufficient basis for excluding the testimony of McKay regarding project delays based on his qualifications. Plaintiff goes to great lengths to demonstrate that Federico is a more qualified expert on the subject, and for that reason, as Plaintiff suggests, McKay should not be permitted to testify and criticize her report. It is an abuse of discretion to exclude an expert's testimony because an expert is comparably less qualified than another expert, *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1995), and extensive practical experience is sufficient to qualify as an expert, *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327-28 (3d Cir. 2002). Here, McKay has extensive engineering and architectural experience, primarily as a consultant, but also in the field. (*See* Pl.'s Br., Exs. B, C, ECF Nos. 219-2, 219-3.) Moreover, Plaintiff's bald assertion that McKay should not testify "because Mr. McKay is not an expert in construction schedule analysis" is circular and does not warrant the disqualification of the expert's testimony on the subject of scheduling delays.

Plaintiff also seeks to bar McKay's testimony on scheduling delays on the basis that his testimony on the subject is unreliable because he has not prepared his own project schedule analysis. Rule 702 requires that expert testimony relating technical or specialized knowledge

satisfy a standard of evidentiary reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (3d Cir. 1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999). In evaluating the reliability of expert evidence, courts must focus "on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. A court may disregard an expert opinion that is analytically disconnected from data relied upon. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") An expert, however, may rely on the opinion of another expert in formulating his or her opinion. *See Lewis v. Rego Co.*, 757 F.2d 66, 74 (3d Cir. 1985); *see also Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 553 (D.N.J. 2014) ("While experts may not simply 'parrot' ideas of other experts, they are permitted to rely on materials used by other experts in developing their own opinions." (internal quotation excluded)); 4 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 703.04(3) (Joseph M. McLaughlin ed., 2d ed. 2014).

The Court will not bar McKay from testifying on the subject of project delays simply because he relied primarily on material contained within the report prepared by Federico in formulating his opinion.[3] Although the parties disagree over whether the section of McKay's report discussing project delays constitutes a schedule analysis, McKay, in essence, looked to the report of Federico, reviewed other schedules reviewed by Federico in preparing her reports, and identified what he believed to be flaws in her report. (*See* Pl.'s Br., Ex. A at 37-55, ECF No. 219-

---

[3] In many ways, Plaintiff's motion to exclude this portion of McKay's expected testimony is more properly brought under Rule 703, which governs what information an expert may properly rely on in forming an opinion. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

2.)  Moreover, McKay explicitly relies on schedule reports and other materials in conducting his analysis.  (*Id.* at 37.)  McKay's opinion regarding the project delay is not inherently unreliable simply because he looked to another expert's opinion and primarily refuted that opinion using other materials typically relied upon by experts in the field.  The Court declines to exclude McKay's testimony on the subject of project delays on the basis that he did not prepare his own independent schedule analysis or because he looked to the analysis of Federico in order to identify its deficiencies.

For the above reasons, the Court denies Plaintiff's motion insofar as it seeks to bar the testimony of McKay on the subject of project delays.

### 3.   Legal Conclusions and Contract Interpretation

Plaintiff moves to preclude McKay from providing testimony interpreting the contract for services between the Arts Council and Defendant and the Cooperation Agreement between the Arts Council and Plaintiff.  Defendant does not oppose the motion.  Accordingly, the Court grants Plaintiff's motion and bars McKay from opining on the interpretation of the agreements in question.

### 4.   Coordination of Mechanical, Electrical, and Plumbing Subcontractors

Plaintiff moves to bar McKay's testimony on the subject of delays related to mechanical, electrical, and plumbing subcontracting caused by a lack of coordination ("MEP Delays") because McKay relies on the deposition testimony of Marc Lorusso, of former Third-Party Defendant Kelter & Giglio Consulting Engineers ("K&G"), in identifying design errors.  Plaintiff argues that, because McKay relies solely on Lorusso's testimony regarding the lack of coordination, McKay's opinion regarding the MEP Delays is unreliable under Rule 702 or barred by Rule 703.  Defendant

responds that, in addition to Lorusso's testimony, McKay relied on many other sources in formulating his opinion.

The Court declines to preclude McKay's testimony regarding the MEP Delays. Rule 703 allows an expert to base his opinion on any facts or data "that the expert has been made aware of," and those facts need not be admissible if they are the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. Here, Lorusso's testimony provides only one piece of evidence in the extensive report provided by McKay. Expert witnesses are commonly allowed to use witness testimony, either through personal perception or by reviewing transcripts, in order to formulate their opinions. *See In re Air Disaster at Lockerbie, Scotland*, 37 F.3d 804, 825 (2d Cir. 1994). McKay's partial reliance on the evidence provided in Lorusso's testimony cannot bar the entirety of McKay's opinion regarding MEP Delays. Moreover, Plaintiff has the option to cross examine McKay on the sources of his opinion regarding MEP Delays. Accordingly, Plaintiff's motion to bar McKay's testimony on the subject of MEP Delays is denied.

**G.    Expert Testimony of Putinas V. Masalaitis, P.E., and Michael L. Wilson, P.E, LEED AP**

Plaintiff, in its final motion, requests that the Court, as a discovery sanction, exclude the expert reports of Putinas V. Masalaitis and Michael L. Wilson, experts initially retained by Third-Party Defendants David Chou & Associates ("Chou") and K&G, respectively. Defendant, after the deadline for disclosing expert reports, adopted the experts and their reports as its own after Defendant settled its third-party claims with Chou and K&G. Plaintiff contends that Defendant, by adopting these experts after the deadline for doing so, violated Rule 26(a)(2) of the Federal Rules of Civil Procedure and thus should be sanctioned under Rule 37(c)(1). Defendant counters, asserting that Plaintiff is not prejudiced by its conduct and, rather, Plaintiff seeks to gain an advantage from Defendant's settlement with Chou and K&G.

12

Rule 37(c)(1) states that, if a party fails to comply with expert disclosure requirements, "the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).   The Third Circuit, in evaluating whether a trial court abused its discretion in imposing such a sanction, has looked to several factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985)).

Here, while certain factors weigh in favor of both parties, the balance weighs in favor of denying Plaintiff's request to impose the requested discovery sanctions. Plaintiff will suffer little prejudice as a result of Defendant's violation of the discovery deadline—Plaintiff has been aware of the portions of the experts' reports that are adverse to its position since the reports were disclosed in April 2013. In fact, while Chou and K&G were still parties to the litigation, Plaintiff sought leave of the Court to obtain a rebuttal expert, which the Court granted, and Plaintiff retained such an expert, Mark Coggin, P.E. In addition, Plaintiff deposed both Chou and K&G's experts. Whatever minimal prejudice that has inured to Plaintiff can in part be cured through cross-examination. Calling these expert witnesses at trial will result in no disruption, because their testimony was anticipated before Defendant adopted them as witnesses. Last, the Court finds that Defendant did not act in bad faith. Defendant adopted the witnesses from Chou and K&G the same day it settled its third-party claims with them.

13

Plaintiff argues that, had it known that the experts were to be offered by Defendant, it would have employed an altogether different litigation strategy. However, had Chou and K&G not settled with Defendant, these same expert witnesses would testify at trial and offer the same information that has been offered in their reports, which casts some blame for delays and overruns on Plaintiff. Simply because the witnesses would be offered in favor of Chou and K&G, in defense of Defendant's third-party claims, does not mean that the portions of their testimony that cast blame on Plaintiff would be disregarded by a jury. Further, there was no indication at the time the experts were named by Chou and K&G that the third-party claims would be tried separately, nor would the Court have likely granted such a request, due to the similarity of the issues involved. *See Hicks v. Unger Motor Co.*, 332 F. Supp. 118, 121 & n.3 (E.D. Pa. 1971). Indeed, Plaintiff's own retention of a rebuttal expert and deposition of the experts belies its claim; had Plaintiff been unperturbed by the testimony of these experts, it would not have obtained a rebuttal expert.

For the above reasons, Plaintiff's request to impose discovery sanctions on Defendant for failure to name Masalaitis and Wilson prior to the relevant discovery deadline is denied.

## II.    Defendant's Motions

### A.    Expert Testimony of Frank Gatlin, A.I.A., NCARB

Defendant moves to bar any testimony offered by Plaintiff's expert, Frank Gatlin, regarding Plaintiff's purported damages, on the basis that Gatlin's opinions on the subject constitute an impermissible net opinion. Defendant contends that Gatlin's report and anticipated testimony on damages is unreliable because he relies primarily on information obtained from Plaintiff regarding the costs incurred by Plaintiff in connection with the Project. Plaintiff responds that Gatlin's opinion was not a regurgitation of Plaintiff's claimed damages, but rather, Gatlin

"reviewed, analyzed, and approved each aspect of the damages prior to including the damages in his report." (Pl.'s Opp. Br. 3, ECF No. 227.)

At this time, the Court is not prepared to render a decision on the reliability of Gatlin's damage calculations. The Court's review of Gatlin's expert report and deposition testimony casts doubt on the independence of Gatlin's own analysis of Plaintiff's damages. Although Rule 703 allows an expert to rely on a variety of information in formulating his or her opinion, the Court is not convinced that Gatlin relied on any specific principles or methodologies in formulating his opinion. In contrast to Plaintiff's objections to the information contained in McKay's expert report, which dealt with opinions related to delay and liability, here, Gatlin's opinion on damages should involve some independent verification of damage figures provided by counsel for Plaintiff, if indeed that is the basis for his opinion. Accordingly, the Court reserves its decision on the reliability of Gatlin's report pending a *Daubert* hearing to be conducted before or during trial.

**B.    *Eichleay* Damages**

Defendant moves to bar Plaintiff's claim for so-called *Eichleay* damages, or damages for "unabsorbed home office overhead costs during a period of government-caused delay in contract performance." *Charles G. Williams Constr., Inc. v. White*, 326 F.3d 1376, 1377 (Fed. Cir. 2003). The Third Circuit has recognized the propriety of pretrial *in limine* motions on evidentiary issues. *See In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd sub nom. on other grounds*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). However, "[i]t is well settled that motions *in limine* . . . are inappropriate devices for resolving substantive issues." *Bowers v. Nat. Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008); *see also* 3 James Wm. Moore, *Moore's Federal Practice* §16.77(4)(d)(ii) (3d ed. 2014)

15

("Motions in limine . . . may be based on any of the grounds available under Federal Rules of Evidence.").

Here, Defendant seeks to bar a claim for damages, which speaks to the substance of Plaintiff's claim and the relief requested. Defendant's assertion regarding *Eichleay* damages is more properly addressed in its proposed jury instructions. Accordingly, Defendant's motion is denied.

## C.     Expert Testimony of Kevin Foley, Alan Haibach, Mark Germond, and Jeff Nathanson

Defendant moves to bar testimony of Kevin Foley, Alan Haibach, Mark Germond, and Jeff Nathanson, on the basis that none of the witnesses have been identified as expert witnesses or submitted expert reports despite their testimony being the kind that requires expert status. Plaintiff counters that none of these witnesses will offer expert testimony; their testimony will be offered as lay testimony.

The Court agrees that these witnesses can testify as to damages. To the extent these witnesses will offer facts within their personal knowledge, no expert qualification is needed. Moreover, their opinions as to damages can be properly admitted under Rule 701. As discussed above, Rule 701, which governs lay testimony, requires that a witness's lay opinion be based on personal knowledge, be helpful to the factfinder, and not be based on expert knowledge. *See* Fed. R. Evid. 701. Courts have routinely permitted lay opinion testimony as to damages by individuals with personal, in-depth knowledge of a business's finances, despite a reliance on specialized knowledge. *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993). Plaintiff states that all four witness, employees of either Plaintiff or the Arts Council, have personal knowledge of information underlying their opinions regarding damages. Accordingly, to the

16

extent these witnesses are to testify to as to matters within their own perception, Defendant's motion is denied.

### D.    Supplemental Document Production

Defendant moves *in limine* for discovery sanctions precluding the introduction of documents produced by Plaintiff and the Arts Council after the close of paper discovery. Defendant characterizes the document production as "the backup documents for [Plaintiff] and [Arts Council's] damages claims." (Def.'s Br. 13, ECF No. 223.)  Defendant asserts that it will be prejudiced by the admission of any the documents included in the late production, as it had already deposed Plaintiff's witnesses, both fact and expert, at the time of production.  Plaintiff responds that Defendant is not prejudiced by the late production, because Defendant was provided the documents in connection with mediation in October 2011 and will have had the documents (following Plaintiff's formal production) for over a year prior to trial.

The Court declines to impose discovery sanctions in connection with the late production. The Court is again guided by the factors discussed by the Third Circuit in *In re TMI*, set forth above, in deciding whether to exclude evidence as a discovery sanction under Rule 37.  *See supra* Part I.G.  Here, there is little prejudice or surprise on the part of Defendant; Defendant was aware and apprised of the documents in question as early as October 2011, and the documents at issue, which constitute "backup documents," merely support damage calculations previously disclosed through discovery.  Moreover, the Court does not find that Plaintiff has acted in bad faith in connection with the late production.  Although the documents were produced outside of the deadline for paper discovery, Plaintiff provided them shortly after the deposition of its expert, Gatlin, during which Defendant extensively questioned the witness on the topic.  Plaintiff's

17

conduct suggests that the failure to produce the documents at issue within the applicable deadline was an oversight.

For the above reasons, the Court declines to impose the extreme sanction of exclusion of evidence, and Defendant's motion is denied.

### E.    Arts Council's Lost Profits

Defendant moves to exclude evidence of the Arts Council's lost profits.  This motion seeks to bar evidence that will preclude a portion of the Arts Council's recovery, which speaks to the substance of its counterclaim.  Accordingly, for the reasons expressed *supra*, Part II.B, this motion is denied.

### F.    Arts Council's Utility Charges

Defendant moves to bar evidence of the Arts Council's damages in the form of utility charges.  For the reasons expressed above, *supra* Part II.B and II.E, this motion is denied.

### G.    Labor Cost Escalation Damages

Defendant moves to bar evidence of an increase in Plaintiff's labor costs.  Defendant so moves on the basis that Plaintiff's witness, during a deposition, could not confirm the increase, and thus, this aspect of Plaintiff's claimed damages is speculative.  Defendant's motion is not appropriately brought as an *in limine* motion as it relates to the substance of Plaintiff's requested relief. *See Bowers*, 563 F. Supp. 2d at 532.  Accordingly, Defendant's motion is denied.

### H.    Delay Damages

Defendant seeks to renew its prior motion for summary judgment on Plaintiff's claim for delay damages.  Defendant's original motion requested dismissal of the delay damages claim because Plaintiff failed to offer reliable expert evidence of delay damages.  (ECF No. 181.) Although the Court, in its decision denying Defendant's summary judgment motion, invited

18

Defendant to bring an *in limine* motion on the subject of Plaintiff's experts, Plaintiff cannot simply renew a summary judgment motion *in limine*.  Accordingly, the motion is denied.

## III.    Conclusion

For the reasons set forth above, and other good cause shown,

IT IS, on this 6th day of January, 2015, **ORDERED** that:

1.    Plaintiff's motion to exclude introduction of the Cooperation Agreement is DENIED insofar as it seeks to bar introduction of the Cooperation Agreement when admitted solely for impeachment purposes and to demonstrate bias on the part of the Arts Council, its employees, or its agents;

2.    Plaintiff's motion to exclude evidence of Randall Dobslaw's physical and mental health is DENIED;

3.    Plaintiff's motion to bar evidence of Defendant's third-party settlement with the Arts Council is GRANTED;

4.    Plaintiff's motion to exclude opinion evidence of Steven Roberts is DENIED insofar as it seeks to bar lay opinion testimony;

5.    Plaintiff's motion to exclude character evidence of Sal Arnone is GRANTED;

6.    Plaintiff's motion to exclude expert testimony of James McKay is decided as follows:

a.    Plaintiff's motion to exclude the expert testimony of James McKay as on the basis of his qualifications is DENIED;

b.    Plaintiff's motion to exclude the expert testimony of James McKay on the issue of project delays is DENIED;

      c.      Plaintiff's motion to exclude James McKay's testimony on contract interpretation is GRANTED;

      d.      Plaintiff's motion to exclude the expert testimony of James McKay on the subject of MEP Delays is DENIED;

7.      Plaintiff's motion for discovery sanctions and the exclusion of expert testimony of Putinas V. Masalaitis and Michael L. Wilson is DENIED;

8.      Defendant's motion to bar any testimony offered by Frank Gatlin regarding Plaintiff's purported damages is RESERVED pending a *Daubert* hearing;

9.      Defendant's motion to exclude *Eichleay* damages is DENIED;

10.      Defendant's motion to bar the testimony of Kevin Foley, Alan Haibach, Mark Germond, and Jeff Nathanson is DENIED;

11.      Defendant's motion for discovery sanctions and the exclusion of documents produced by Plaintiff on December 18, 2013, is DENIED;

12.      Defendant's motion to exclude evidence of the Arts Council's lost profits is DENIED;

13.      Defendant's motion to bar evidence of the Arts Council's damages in the form of utility charges is DENIED;

14.      Defendant's motion to bar evidence of an increase in Plaintiff's labor costs is DENIED;

15.      Defendant's motion to renew its prior summary judgment motion is DENIED.


                                           s/ Michael A. Shipp
                                           MICHAEL A. SHIPP
                                           UNITED STATES DISTRICT JUDGE